EXHIBIT A

IN THE SUPERIOR COURT OF FULTON COUNTY
STATE OF GEORGIA

FILED IN OFFICE
MAR - 1 2013
DEPUTY CLERK SUPERIOR COURT FULTON COUNTY, GA

COPY

BEST COPY AVAILABLE

JANET HILL,

Plaintiff,

vs.

AMERICA'S WHOLESALE LENDER, MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AND THE BANK OF NEW YORK MELLON F/K/A THE BANK OF NEW YORK AS TRUSTEE FOR THE CERTIFICATEHOLDERS OF CWALT, INC., ALTERNATIVE LOAN TRUST 2005-58, MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2005-58,

Defendants.

Civil Action No. 2013CV228015

**COMPLAINT FOR DECLARATORY JUDGMENT & INJUNCTIVE RELIEF**

COMES NOW, Plaintiff, *JANET HILL* ("Plaintiff") seeking declaratory judgment by virtue of the provisions of the Declaratory Judgment Act, Ga. Code Ann. §§ 9-4-1 et seq. and injunctive relief pursuant to § 9-11-65 against Defendants, *AMERICA'S WHOLESALE LENDER, MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AND THE BANK OF NEW YORK MELLON F/K/A THE BANK OF NEW YORK AS TRUSTEE FOR THE CERTIFICATEHOLDERS OF CWALT, INC., ALTERNATIVE LOAN TRUST 2005-58, MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2005-58* ("Defendants") and shows to the court the following facts:

**INTRODUCTION**

Plaintiff brings this Complaint for Declaratory Judgment & Injunctive Relief pursuant to Ga. Code Ann. §§ 9-4-1 et seq., Uniform Superior Court Rule 6.7 and Ga. Code Ann. §§ 9-11-65(a) and (b) against the listed Defendants. Specifically, Plaintiff seeks a temporary restraining order pursuant to

Ga. Code Ann. § 9-11-65(b) to enjoin the enforcement of the power of sale between Plaintiff and America's wholesale lender.

## JURISDICTION, VENUE, AND PARTIES

1.

Subject matter jurisdiction is proper as the Superior Court has jurisdiction pursuant to Ga. Code Ann. § 9-4-2.

2.

Defendant, *AMERICA'S WHOLESALE LENDER, (AWL)* is foreign corporation, organized and existing under the laws of New York not authorized to do business in Georgia, whose principal place of business is located at P.O. Box 660694, Dallas, TX 75266-0694. Defendant is subject to the Jurisdiction of this Court pursuant to Ga. Code Ann. § 9-10-91 (West) as it transacts business within this state and owns, uses, or possesses real property within this state. Defendant, as a foreign corporation not qualified to do business in this state may be served by publication pursuant to Ga. Code Ann. § 9-11-4(f)(1)(b) (West).[1]

3.

Defendant, *MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. (MERS)* is a foreign corporation, organized and existing under the laws of another state not authorized to do business in Georgia, whose principal place of business is located at P.O. Box 2026, Flint, MI 48501-2026. Defendant is subject to the Jurisdiction of this Court pursuant to Ga. Code Ann. § 9-10-91 (West) as it transacts business within this state and owns, uses, or possesses real property within this state. Defendant, as a foreign corporation not qualified to do business in this state may be served by publication pursuant to Ga. Code Ann. § 9-11-4(f)(1)(b) (West).

---

[1] Am. Photocopy Equip. Co. v. Lew Deadmore & Associates, Inc., 127 Ga. App. 207, 211, 193 S.E.2d 275, 278 (1972)

4.

Defendant, *THE BANK OF NEW YORK MELLON F/K/A THE BANK OF NEW YORK AS TRUSTEE FOR THE CERTIFICATEHOLDERS OF CWALT, INC., ALTERNATIVE LOAN TRUST 2005-58, MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2005-58 (BONY)* is a nonresident trustee, without a designated agent in this State. The trustee has a principal place of business located at 101 Barclay St., New York, NY 10286. Defendant is subject to the Jurisdiction of this Court pursuant to Ga. Code Ann. § 9-10-91 (West) as it transacts business within this state and owns, uses, or possesses real property within this state. Defendant, as a nonresident trustee without a resident agent in this State, may be served with summons, notice, or process by service of summons, notice, or process upon the Secretary of State. Ga. Code Ann. § 53-12-320 (West)

## DECLARATORY JUDGMENT ACTION PROPER

5.

A declaratory judgment is not an equitable action but, an action at law. *See*, Felton v. Chandler, 201 Ga. 347(2, 3, 4), 39 S.E.2d 654; Glover v. Glover, 172 Ga. App. 278, 279, 322 S.E.2d 755, 757 (1984) A declaratory judgment action is the proper procedural vehicle to resolve the parties' dispute as "[d]isputes concerning ownership of ... land are classic candidates for resolution via declaratory judgment. [Cits.]" J.M. Huber Corp. v. Ga. Marble Co., 239 Ga.App. 271, 273(1), 520 S.E.2d 296 (1999). See, Smith v. Jones, 278 Ga. 661, 604 S.E.2d 187, 188 (2004); Loftis v. Johnson, 249 Ga. 794, 294 S.E.2d 511, 512 (1982)(Suit was filed seeking declaratory judgment that warranty deed was null and void by reason of the incompetency of the parties' mother.)

The facts alleged in this case present the most nearly perfect basis for the application of declaratory judgment jurisdiction. They show an actual controversy between adversary parties, consisting of a claim of legal title on one side and denial on the other. They show a justiciable controversy and a protectable legal interest. The danger or dilemma of the petitioner is present and does not depend on a contingency or the happening of a hypothetical future event, and the fact that the defendant has not currently instituted an action on its claim does not make petitioner's rights to a declaratory judgment depend on a contingency. The petitioner's right to relief from uncertainty and insecurity with respect to her title and her legal relations with the defendant are present, real and urgent. She is entitled to know whether she owns the land and can use it or sell it or whether

she is and has been and will continue to in effect be the property owner, or whether defendants are trespassing. And, so far as the facts show this action is the exclusive remedy. This petition is not based solely on a question of fact primarily, the question of existence of AWL. Legal title, interests and relationships are at stake and the mere circumstance that a fact determines what they are is incidental. In Aetna Life Ins. Co. v. Haworth, 300 U.S. 227, 242 57 S.Ct. 461, 465, 81 L.Ed. 617, the court stated: 'That the dispute turns upon questions of fact does not withdraw it... from judicial cognizance. The legal consequences flow from the facts and it is the province of the courts to ascertain and find the facts in order to determine the legal consequences. That is everyday practice.' The suitability of application for relief by prayer for a negative declaration is clear from the Act of 1945, pp. 137, 139, Ga.Code Ann. § 110-1111. To call such a prayer negative has been called a colloquialism, and has been said to describe a positive declaration that no right exists on the part of the defendant. Borchard, p.229. For citations of other cases involving findings of fact as incidental to legal conclusions see Borchard, pp. 396, 629. A debtor, faced with the unfounded claim of a creditor, has a sufficient legal interest to justify a declaratory adjudication that such indebtedness has no basis. Borchard, Declaratory Judgments 2d Ed., p. 55. Suppose H alleges that S owes him $1,000 which S denies. Without waiting for H to commence suit, S may assert his right to relief from the insecurity of an unfounded claim by obtaining a declaratory judgment.'

'That, of course, is a situation different from what we have here. There, the purpose of the action would be to get a determination of whether the status of debtor and creditor existed between the parties, not determination of how much S owes H growing out of that status.' See 16 Am.Jur. §§ 31 & 32 and 1950 Pocket Parts for authority for declaring rights and status where the validity of deeds and contracts are in question. Bond v. Ray, 83 Ga. App. 817, 819-21, 65 S.E.2d 30, 31-32 (1951)

## STATEMENT OF FACTS

Plaintiff shows that there is an actual controversy between the Plaintiff and Defendant, growing out of the following statement of facts, to-wit:

**6.**

The subject real property is located at 543 Auburn Ave., Atlanta, GA 30312 (hereinafter the "Subject

Property") having a legal description described in Exhibit A attached hereto. *See* **Exhibit A.**

**7.**

The plaintiff acquired the subject property through a Warranty Deed on October 6th, 1999. This Deed is filed and recorded in the Superior Court of Fulton County Real Estate Records at Deed Book 27887 Page 150. *See* **Exhibit B.**

**8.**

On October 06, 2005 plaintiff executed a promissory note, in favor of America's Wholesale Lender a Corporation, allegedly, organized and existing under the laws of New York (defined per section (D) as "Lender") and a security deed, in favor of Mortgage Electronic Registration Systems (defined per section (C) as "Nominee for Lender") as nominee for America's Wholesale Lender, which was filed and recorded in the Superior Court of Fulton County Real Estate Records at Deed Book 41205 Page 241. *See* **Exhibit C.**

**9.**

The aforementioned Security Deed, was subsequently assigned by MERS as nominee for America's Wholesale Lender, on June 1st, 2011 to defendant The Bank of New York Mellon f/k/a The Bank of New York as trustee for the Certificateholders of CWALT, Inc., Alternative Loan Trust 2005-58, Mortgage Pass-Through Certificates, Series 2005-58, as filed and recorded in the Superior Court of Fulton County Real Estate Records at Deed Book 50135 Page 399. *See* **Exhibit D.** When BONY received this assignment the plaintiff's loan was in default, and it was assigned for the purpose of facilitating the collection of a debt for another.

**10.**

America's Wholesale Lender was never organized and has never existed as Corporation under the laws of New York. New York Secretary State shows an America's Wholesale Lender, Inc. that was formed in December of 2008 and has not affiliation with the aforementioned AWL. *See* **Exhibit E.**

**11.**

MERS acting as nominee conveyed the subject property on behalf of America's Wholesale Lender.

**12.**

MERS conveyance as nominee for America's Wholesale Lender transferred all the interest of America's Wholesale Lender to BONY.

**13.**

America's Wholesale Lender, as a nonexistent entity, acquired no interest in the subject property.

14.

MERS transfer to BONY failed to transfer any interest in the subject property as "one cannot transfer or convey an interest in real property greater than [he/she] has." Lionheart Legend, Inc. v. Norwest Bank Minnesota Nat. Ass'n, 253 Ga. App. 663, 667, 560 S.E.2d 120, 125 (2002).

15.

On August 2nd, 2011 defendant, BONY, attempted to foreclose on plaintiff. ***See*** **Exhibit F.**

16.

Plaintiff has received communications from multiple entities attempting to collect on the aforementioned promissory note.

17.

BONY never obtained any interest in the subject property as MERS was without any interest to transfer.

## PLAINTIFF ALLEGES RIGHTS WITH REFERENCE TO SAID CONTROVERSY

18.

1. MERS as agent for a fictitious entity could not acquire title; therefore could not have conveyed title to BONY. Thus the property remains solely vested in the plaintiff.

Defendant, BONY, issued a Notice of Foreclosure Sale to the plaintiff stating that it had received an assignment of the security deed from MERS as nominee for America's Wholesale Lender. MERS, in its nominee capacity, possesses no beneficial ownership[2] rights by its own admission[3] and seeks to assert its interest in the security instrument and note solely in a "nominee" capacity[4].

---

[2] ***beneficial ownership.*** (18c) 1. A beneficiary's interest in trust property. — Also termed *equitable ownership.* OWNERSHIP, Black's Law Dictionary (9th ed. 2009), ownership.

[3] Rules of Membership, MERS available at: http://www.mersinc.org/mersproducts/publications.aspx?mpid=1 (last visited May 7, 2012) (referring throughout to other interests holders as "beneficial owners"); see also Associated Credit Union v. Pinto, 297 Ga. App. 605, 677 S.E.2d 789 (2009) (previous owner lacked standing to claim statutory damages and attorney's fees when he suffered no harm at the time the complaint was filed as he did not own the property and did not claim present marketability of title issues). Ga. Real Estate Finance and Foreclosure Law § 5:4 (2012-2013 ed.)

[4] See Rules of Membership, MERS, available at: http://www.mersinc.org/Foreclosures/index.aspx (last visited May 7, 2012). Ga. Real Estate Finance and Foreclosure Law § 5:4 (2012-2013 ed.)

MERS counsel recently described relationship of a lender and MERS as

> "MERS simply holds the security deed as nominee for the actual owner of the promissory note and security deed. It is common these days for mortgage loans (as well as other loans) to be bought and sold several times during the life of a loan. MERS simply acts as the record title holder of the security deed so that transfers and assignments do not have to be filed in the appropriate superior court clerk's office each time the loan is sold or transferred from one note holder to the next. MERS is never the lender. Rather, it acts as the nominee of the lender to hold the security deed. TAYLOR BEAN & WHITAKER MORTGAGE CORPORATION, and Mortgage Electronic Registration Systems, Inc., Appellants, v. Linda BROWN, Appellee., 2002 WL 32333560 (Ga.), 3-4.

Courts have held that MERS' status as "nominee" of a lender conveys few, if any legal rights and certainly not enough to assign the mortgage,[5] while other courts, examining identical language in MERS security deeds, have held just the opposite.[6] Ga. Real Estate Finance and Foreclosure Law § 5:4 (2012-2013 ed.). Additionally, Black's Law Dictionary defines nominee as "[a] party who holds bare legal title for the benefit of others or who receives and distributes funds for the benefit of others."

---

[5] In re Agard, 444 B.R. 231, 252 (Bankr. E.D. N.Y. 2011) ("The Court ... finds that the Mortgage, by naming MERS a 'nominee,' and/or 'mortgagee of record' did not bestow authority upon MERS to assign the Mortgage."); Landmark Nat. Bank v. Kesler, 289 Kan. 528, 538, 216 P.3d 158, 165-66 (2009) ("What meaning is this court to attach to MERS's designation as nominee for Millennia? The parties appear to have defined the word in much the same way that the blind men of Indian legend described an elephant—their description depended on which part they were touching at any given time."). "The fact that the borrower acknowledged and consented to MERS acting as nominee of the lender has no bearing on what specific powers and authority the lender granted MERS. The problem is not whether the borrower can object to the assignees' standing, but whether the original lender, who is not before the Court, actually transferred its rights to the Plaintiff. To allow a purported assignee to foreclosure in the absence of some proof that the original lender authorized the assignment would throw into doubt the validity of title of subsequent purchasers, should the original lender challenge the assignment at some future date." Bank of New York v. Alderazi, 28 Misc. 3d 376, 379, 900 N.Y.S.2d 821, 824 (Sup 2010). Ga. Real Estate Finance and Foreclosure Law § 5:4 (2012-2013 ed.)

[6] Bertrand v. SunTrust Mortg., Inc., 2011 WL 1113421 (D. Or. 2011) (language in standard MERS deed of trust "grants MERS the power to initiate foreclosure and to assign its beneficial interest under the Deed of Trust"); In re Martinez, 2011 WL 996705 (Bankr. D. Wyo. 2011) (The court finds that MERS had authority to assign the mortgage on behalf of Taylor, and as provided in the Mortgage, to "take any action required of Lender"); Burnett v. Mortgage Electronic Registration Systems, Inc., 2009 WL 3582294 (D. Utah 2009) (language in standard MERS deed of trust "clearly grants MERS the authority to exercise the full ambit of authority possessed by the Lender"). Ga. Real Estate Finance and Foreclosure Law § 5:4 (2012-2013 ed.)

NOMINEE, Black's Law Dictionary (9th ed. 2009), Random House Dictionary defines the term nominee as "a person in whose name title to real estate or ownership of stock is held but who is not the actual proprietor or holder." NOMINEE, *Dictionary.com Unabridged.* Random House, Inc. 20 Jan. 2013. <Dictionary.com http://dictionary.reference.com/browse/nominee>, and MERS defines its nominee status in its own literature as synonymous with mortgagee, beneficiary or grantee[7]. Ga. Real Estate Finance and Foreclosure Law § 5:4 (2012-2013 ed.).

Regardless of the exact rights that are conferred when a one holds the status of "nominee", the status creates an agency. The term agency means a fiduciary relation "which results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other to act." (Citations omitted.) Smith v. Merck, 206 Ga. 361, 368(1)(a), 57 S.E.2d 326 (1950)." Webb v. Day, 273 Ga. App. 491, 492, 615 S.E.2d 570, 572 (2005). In an agency relationship, the principal is the one for whom action is to be taken and who assumes the right to control the time and manner of his agent's work. See, McMullan v. Georgia Girl Fashions, Inc., 180 Ga. App. 228, 348 S.E.2d 748 (1986). The agent is a person authorized to act for another, this authorization arising when, "expressly or impliedly, there has been a delegation with more or less discretionary power to act, to manage an affair, and to render an account." Headrick v. Fordham, 154 Ga. App. 415, 417, 268 S.E.2d 753, 755 (1980). In other words, the agent is the one who is to act. See, Restatement Second, Agency § 1. "The distinguishing characteristic of an agent is that he is vested with authority, real or ostensible, to create obligations on behalf of his principal, bringing third parties into contractual relations with him." (Citations and punctuation omitted.) Physician Specialists &c. v. Wildmon, 238 Ga.App. 730, 732(1)(a), 521 S.E.2d 358 (1999)." Stallings v. Sylvania Ford-

[7] In Georgia the term ""grantee" includes any person or group of persons constituting a legal entity within the meaning of the law. It may include incompetents, minors, aliens, churches, associations, partnerships, corporations, state, city and county governments, the United States of America, and trustees, executors, and other fiduciaries. 2 Ga. Real Estate Law & Procedure § 19-137 (6th ed.).

Mercury, Inc., 242 Ga. App. 731, 732, 533 S.E.2d 731, 733 (2000). "An agent is also under a duty to obey his principal's instruction. *Fort Valley Coca-Cola etc. v. Lumbermen's Mut. Cas. Co.*, 69 Ga.App. 120, 24 S.E.2d 846 (1943)." Stanford v. Otto Niederer & Sons, Inc., 178 Ga. App. 56, 57, 341 S.E.2d 892, 894 (1986). "The 'authority of the agent' has been defined as the power of the agent to affect the legal relations of the principal by acts done in accordance with the principal's manifestations of consent to him. The authority of the agent is the very essence of the principal and agent relationship; unless otherwise agreed, it includes only authority to act for the benefit of the principal, and the source of the authority is always the principal, and never the agent." 3 AmJur2d 574, Agency § 71. See generally O.C.G.A § 10-6-1. Canal Ins. Co. v. Harrison, 189 Ga. App. 681, 682, 376 S.E.2d 923, 924 (1988).

Establishing that the status of "Nominee" creates an agency relationship between the lender and MERS, with the lender being the principal and MERS the agent. MERS, as a matter of law, is required to act under the authority of the principal, and to its benefit.

It is well settled in Georgia that a principal may be either a natural person or an artificial one but if it is not a legal entity it has no legal existence, and cannot sue or be sued and has no capacity to appoint an agent. See, 3 Am. Jur. 2d Agency § 9; Ga. Code Ann. § 10-6-89 (West)( "[t]he contract of any person or corporation who purports as agent of a nonexisting principal to bind such nonexisting principal only shall be void."). MERS as agent could only perform on behalf of its principal, but its purported principal has no existence, thus MERS could not perform any act in its position as agent/nominee. An assignment from a fictitious assignor is a nullity. *See, Thompson v. Etowah Iron Co.*, 91 Ga. 538, 544, 17 S.E. 663 (1893) ("[W]here the grantor of a deed include[s] ... lands to which [he] ha[s] no title, and over which [he] ha[s] never exercised any acts of ownership, such instrument would constitute no cloud upon the title of the true owners"), overruled on other grounds, Seymour v.

Seymour, 210 Ga. 49, 77 S.E.2d 433 (1953). See also *Pindar's Georgia Real Estate Law and Procedure*, 6[th] ed., § 25–7 ("A deed executed by a grantor without title ... does not constitute even an appearance of title"). Day v. Nu-Day P'ship, LLLP, 289 Ga. 357, 359, 711 S.E.2d 689, 691 (2011)

19.

2. America's Wholesale Lender as a fictitious entity could not have owned property in this State and any purported conveyance is void; therefore the subject property remained vested in the plaintiff.

Even if one were to ignore the fact that MERS principal is nonexistent, one cannot ignore the fact that MERS could only acquire the interest that the beneficial owner, America's Wholesale Lender, possessed, and in Georgia a deed from a named person purporting to convey property to [a fictitious entity] renders such deed prima facie void. In this State every owner of property must be a natural person, a corporation, or a quasi-person or entity, such as a partnership, and 'The law recognizes no other owners of property', Miller v. Brooks, 120 Ga. 232, 234, 47 S.E. 646, 647. Since the plaintiff conveyed the subject property to a beneficial owner that was not a natural person, partnership or corporation the conveyance is absolutely void. *See*, Cox v. Pearson, 212 Ga. 294, 92 S.E.2d 25 (1956). In reiteration, "[i]t is a well-established principle of law that a deed made to a person not in esse is absolutely void." Davis v. Hollingsworth, 113 Ga. 210, 211. 38 S. E. 827 (84 Am. St. Rep. 233) and authorities cited; 1 Devlin on Real Estate (3d Ed.) 273, § 187. This principle has uniformly been recognized by this court. Plant v. Plant, 122 Ga. 763, 50 S. E. 961; Butt v. Jackson, 148 Ga. 672, 97 S. E. 854." Handy v. Handy, 154 Ga. 686, 115 S.E. 114 (1922)

The aforementioned principals of law are of the upmost importance as the highest Court in this State held not so long ago, "the maker of a negotiable note and security deed must determine at the time of payment whether the payee is the holder of the instrument or the authorized agent of the holder in

order to protect himself against liability for double payment. If the original grantee has assigned the instrument to another, who is a holder in due course, the burden rests with the maker to determine same and pay only the holder or his authorized agent. See Wilcox, Gibbs & Company v. Aultman, 64 Ga. 544; Walton Guano Company v. McCall, 111 Ga. 114, 36 S.E. 469; Bank of The University v. Tuck, 96 Ga. 456, 465, 23 S.E. 467. The long and short of the matter is that the borrower must be as careful in repaying the debt as the lender presumptively was in making the loan." Groover v. Peters, 231 Ga. 531, 202 S.E.2d 413 (1973).

## DEFENDANT'S CONTENTION WITH REFERENCE TO SAID CONTROVERSY

**20.**

1. Defendant contends that a fictitious entity can own property in the State of Georgia

**21.**

2. Defendant contends that a fictitious entity can contract through an agent.

**22.**

3. Defendant contends that a fictitious entity as principal can direct an agent.

**23.**

4. Defendants contend that an agent of a non-existent principal can receive direction to convey property that such principal did not and could not have owned.

## INJUNCTION

**24.**

In consideration of the facts herein alleged, Defendant should be restrained and enjoined by this Court from terminating Its existing agreement with Plaintiff pending the adjudication of the questions raised in this complaint, and in order to maintain the status quo pending the adjudication

of such questions, in order to preserve the rights of the Plaintiff as hereinabove set out, this Court should grant a restraining order pending said adjudication.

25.

Although questions of fact are raised by this complaint, the determination of the same by a jury is expressly waived by Plaintiff.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays that:

a. Process issue by publication law requiring the Defendants to answer this complaint as provided by law;
b. That the Defendants be restrained and enjoined from exercising the power of sale until further order of this Court; and that the Defendant be required to show cause on a day certain why said restraining order and injunction should not be made permanent;
c. That this Court enter a judgment in said matter declaring the rights of Plaintiff as sole owner of subject property;
d. That this Court order Defendants to pay all cost of litigation, to include attorney's fees; and
e. That Plaintiff have such other and further relief as this Court finds just and proper.

This 21st day of February, 2013.

Respectfully submitted,

GRADY ROBERTS
Georgia Bar No. 609540
Attorney for Plaintiff
94 Howell Street, NE
Atlanta, GA 30312
(404) 794-7000 phone
(404) 794-7001 fax

IN THE SUPERIOR COURT OF FULTON COUNTY
STATE OF GEORGIA

| | |
|---|---|
| JANET HILL,<br><br>Plaintiff,<br><br>vs.<br><br>AMERICA'S WHOLESALE LENDER, MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AND THE BANK OF NEW YORK MELLON F/K/A THE BANK OF NEW YORK AS TRUSTEE FOR THE CERTIFICATEHOLDERS OF CWALT, INC., ALTERNATIVE LOAN TRUST 2005-58, MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2005-58,<br><br>Defendants. | Civil Action No. |

**RULE NISI**

The within and foregoing *COMPLAINT FOR DECLARATORY JUDGMENT AND INJUNCTIVE RELIEF* having been read and considered, it is hereby filed.

Defendants are ordered to show cause before this Court on the ________ day of ______________, *2013,* at ___.M. why the prayers of the Plaintiff for declaratory judgment and injunctive relief should not be granted. In the interim, until further order of this Court, said Defendant herein is refrained and enjoined from further proceeding with or prosecution of the within action.

This _____day of ____________, 2013.

_______________________________
Judge ___________________,
Fulton County Superior Court

Presented By:

_______________________
GRADY ROBERTS
Georgia Bar No. 609540
Attorney for Plaintiff
94 Howell Street, NE
Atlanta, GA 30312
(404) 794-7000 phone
(404) 794-7001 fax

# EXHIBIT "A"

All that tract or parcel of land lying and being in Land Lot 46 of the 14th District of Fulton County, Georgia, being more fully described as follows:

Beginning at a point located at the intersection of the southerly side of Auburn Avenue and the east side of Howell Street; thence running northeasterly along the southerly side of Auburn Avenue forty-six (46) feet to a point; thence south one hundred eleven and five-tenths (111.5) feet to a point; thence west forty and five-tenths (40.5) feet to a point located on the east side of Howell Street; thence north along the east side of Howell Street ninety-four (94) feet to the point of beginning; being known as No. 543 Auburn Avenue, Atlanta, Georgia, and being more particularly shown by a plat of survey dated February 6, 1956, prepared by W.H. Brewer, Surveyor, on file in the office of Lawyers Title Insurance Corporation.

# EXHIBIT "B"

FILED AND RECORDED

1999 OCT 20 AM 8:30

JUANITA HICKS
CLERK SUPERIOR COURT

Fulton County, Georgia
Real Estate Transfer Tax
Paid $ 7.50
Date 10-20-99
JUANITA HICKS
Clerk, Superior Clerk
By: Deputy Clerk

# WARRANTY DEED

TALLEY & SHARP, P.C.
1892 Ga. Hwy. 138, S.E.
Conyers, Georgia 30013

GEORGIA, FULTON COUNTY

THIS INDENTURE, Made this 6th day of OCTOBER, 1999, between **DAISY BENNETT FLOURNOY A/K/A DAISY LEE BENNETT FLOURNOY** of the State of Georgia and County of DeKalb as party of the first part, hereinafter called GRANTOR, and **JANET HILL**, of the State of Georgia and County of Fulton as party of the second part, hereinafter called GRANTEE, (the words "Grantor" and "GRANTEE" to include their respective heirs, successors and assigns where the context requires or permits).

**WITNESSETH:** That Grantor, for and in consideration of the sum of TEN DOLLARS ($10.00) AND OTHER VALUABLE CONSIDERATIONS in hand paid at and before the sealing and delivery of these presents, the receipt whereof is hereby acknowledged, the undersigned, DAISY **BENNETT FLOURNOY A/K/A DAISY LEE BENNETT FLOURNOY** does hereby grant, bargain, sold and convey and by these presents, does grant, bargain, sold and conveyed unto **JANET HILL** her heirs and assigns, the following described property to wit:

**ALL that tract or parcel oof Land lying and being in Land Lot 46 of the 14th Distrcit of Fulton County, Georgia, being more fully described as follows:**

**BEGINNING at a point located at the intersection of the southerly side of Auburn Avenue and the east side of Howell Street; thence running northeasterly along the southerly side of Auburn Avenue forty-six (46) feet to a point; thence south one hundred eleven and five-tenths (111.5) feet to a point; thence west forty and five-tenths (40.5) feet to a point located on the east side of Howell Street; thence north along the east side of Howell Street ninety-four (94) feet to the point of beginning; being known as No. 543 Auburn Avenue, Atlanta, Georgia, and being more particularly shown by a plat of survey dated February 6, 1956, prepared by W.H. Brewer, Surveyor, on file in the office of Lawyers Title Insurance Corporation.**

TO HAVE AND TO HOLD the said bargained premises, together with all and singular the rights, members and appurtenances thereof, to the same being, belonging or in any way appertaining, to the only proper use, benefit and behoof of the said grantees forever, **IN FEE SIMPLE.**

And the said Grantor will warrant and forever defend the right and title to the above described property unto the said grantee against the unlawful claims of all persons whomsoever.

**IN WITNESS WHEREOF**, the Grantor has signed and sealed this deed, the day and year above written.

BOOK 27887 PG 150

Signed, sealed and delivered
in the presence of:

[signature]
WITNESS

N.P.
SEAL

[signature]
NOTARY PUBLIC

Notary Public, DeKalb County, Georgia
My Commission Expires September [illegible]

[signature]
DAISY BENNETT FLOURNOY A/K/A
DAISY LEE BENNETT FLOURNOY

# EXHIBIT "C"

Deed Book 41285 Pg 241
Filed and Recorded Oct-25-2005 08:33am
2005-0367111
Georgia Intangible Tax Paid $1,392.00
Juanita Hicks
Clerk of Superior Court
Fulton County, Georgia

Gibeon Partners
1720 Peachtree St., Suite 1040N
Atlanta, GA 30309

After Recording Return To:
JANE DOCHAN
MS SV-79 DOCUMENT PROCESSING
P.O.Box 10423
Van Nuys, CA 91410-0423

Prepared By:
TERRI MILLER

[Space Above This Line For Recording Data]

REDACTED — [Escrow/Closing #]    REDACTED — [Doc ID #]

# SECURITY DEED

MIN REDACTED

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

**(A) "Security Instrument"** means this document, which is dated OCTOBER 06, 2005 , together with all Riders to this document.
**(B) "Borrower"** is
JANET HILL

Borrower is the grantor under this Security Instrument.
**(C) "MERS"** is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the grantee under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.
**(D) "Lender"** is
AMERICA'S WHOLESALE LENDER



REDACTED

REDACTED

DOC ID #: REDACTED

, Lender is a CORPORATION
organized and existing under the laws of NEW YORK . Lender's address is
P.O. Box 660694, Dallas, TX 75266-0694 .
(E) "Note" means the promissory note signed by Borrower and dated OCTOBER 06, 2005 . The Note states that Borrower owes Lender
FOUR HUNDRED SIXTY FOUR THOUSAND and 00/100

Dollars (U.S. $ 464,000.00 ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than NOVEMBER 01, 2035 .
(F) "Property" means the property that is described below under the heading "Transfer of Rights in the Property."
(G) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.
(H) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| [X] Adjustable Rate Rider | [ ] Condominium Rider | [ ] Second Home Rider |
| [ ] Balloon Rider | [ ] Planned Unit Development Rider | [ ] 1-4 Family Rider |
| [ ] VA Rider | [ ] Biweekly Payment Rider | [X] Other(s) [specify] |
| | | 0 |

(I) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.
(J) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.
(K) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.
(L) "Escrow Items" means those items that are described in Section 3.
(M) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.
(N) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.
(O) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.
(P) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.
(Q) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS, with power of sale, the following described property located in the
COUNTY of FULTON :
[Type of Recording Jurisdiction] [Name of Recording Jurisdiction]
SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF.

DOC ID #: REDACTED

Parcel ID Number: which currently has the address of

543 AUBURN, ATLANTA ,
[Street/City]

Georgia 30312 ("Property Address"):
[Zip Code]

TO HAVE AND TO HOLD this property unto MERS (solely as nominee for Lender and Lender's successors and assigns, and to the successors and assigns of MERS, forever, together with all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to *Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency.* However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

DOC ID #: REDACTED

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to

Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property (as set forth below). Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, making repairs, replacing doors and windows, draining water from pipes, and eliminating building or other code violations or dangerous conditions. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

DOC ID #: REDACTED

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

**(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

**(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.**

**11. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

DOC ID #: REDACTED

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

DOC ID #: REDACTED

17. **Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

18. **Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

19. **Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

20. **Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. **Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

DOC ID #: REDACTED

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale granted by Borrower and any other remedies permitted by Applicable Law. Borrower appoints Lender the agent and attorney-in-fact for Borrower to exercise the power of sale. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.**

**If Lender invokes the power of sale, Lender shall give a copy of a notice of sale by public advertisement for the time and in the manner prescribed by Applicable Law. Lender, without further demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Lender determines. Lender or its designee may purchase the Property at any sale.**

**Lender shall convey to the purchaser indefeasible title to the Property, and Borrower hereby appoints Lender Borrower's agent and attorney-in-fact to make such conveyance. The recitals in the Lender's deed shall be prima facie evidence of the truth of the statements made therein. Borrower covenants and agrees that Lender shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it. The power and agency granted are coupled with an interest, are irrevocable by death or otherwise and are cumulative to the remedies for collection of debt as provided by Applicable Law.**

**If the Property is sold pursuant to this Section 22, Borrower, or any person holding possession of the Property through Borrower, shall immediately surrender possession of the Property to the purchaser at the sale. If possession is not surrendered, Borrower or such person shall be a tenant holding over and may be dispossessed in accordance with Applicable Law.**

**23. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall cancel this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

**24. Waiver of Homestead.** Borrower waives all rights of homestead exemption in the Property.

**25. Assumption Not a Novation.** Lender's acceptance of an assumption of the obligations of this Security Instrument and the Note, and any release of Borrower in connection therewith, shall not constitute a novation.

**26. Security Deed.** This conveyance is to be construed under the existing laws of the State of Georgia as a deed passing title, and not as a mortgage, and is intended to secure the payment of all sums secured hereby.

DOC ID #: REDACTED

BORROWER ACCEPTS AND AGREES to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

IN WITNESS WHEREOF, Borrower has signed and sealed this Security Instrument.

_______________ (Seal)
JANET HILL -Borrower

_______________ (Seal)
-Borrower

_______________ (Seal)
-Borrower

_______________ (Seal)
-Borrower

STATE OF GEORGIA, County ss: Fulton

Signed, sealed and delivered in the presence of:

LESIA M. WEST NOTARY PUBLIC CARROLL COUNTY, GA

_______________
Unofficial Witness

Lesia M. West Carroll
Notary Public, County
State of Georgia

GEORGIA

GRANTOR: JANET HILL

LENDER: AMERICA'S WHOLESALE LENDER

DATE OF SECURITY DEED: October 6, 2005

## WAIVER OF BORROWER'S RIGHTS

BY EXECUTION OF THIS PARAGRAPH, GRANTOR EXPRESSLY: (1) ACKNOWLEDGES THE RIGHT TO ACCELERATE THE DEBT AND THE POWER OF ATTORNEY GIVEN HEREIN TO LENDER TO SELL THE PREMISES BY NONJUDICIAL FORECLOSURE UPON DEFAULT BY GRANTOR WITHOUT ANY JUDICIAL HEARING AND WITHOUT ANY NOTICE OTHER THAN SUCH NOTICE AS IS REQUIRED TO BE GIVEN UNDER THE PROVISIONS HEREOF; (2) WAIVES ANY AND ALL RIGHTS WHICH GRANTOR MAY HAVE UNDER THE FIFTH AND FOURTEENTH AMENDMENTS TO THE CONSTITUTION OF THE UNITED STATES, THE VARIOUS PROVISIONS OF THE CONSTITUTION FOR THE SEVERAL STATES, OR BY REASON OF ANY OTHER APPLICABLE LAW TO NOTICE AND TO JUDICIAL HEARING PRIOR TO THE EXERCISE BY LENDER OF ANY RIGHT OR REMEDY HEREIN PROVIDED TO LENDER, EXCEPT SUCH NOTICE AS IS SPECIFICALLY REQUIRED TO BE PROVIDED HEREOF; (3) ACKNOWLEDGES THAT GRANTOR HAS READ THIS DEED AND SPECIFICALLY THIS PARAGRAPH AND ANY AND ALL QUESTIONS REGARDING THE LEGAL EFFECT OF SAID DEED AND ITS PROVISIONS HAVE BEEN EXPLAINED FULLY TO GRANTOR AND GRANTOR HAS BEEN AFFORDED AN OPPORTUNITY TO CONSULT WITH COUNSEL OF GRANTOR'S CHOICE PRIOR TO EXECUTING THIS DEED; (4) ACKNOWLEDGES THAT ALL WAIVERS OF THE AFORESAID RIGHTS OF GRANTOR HAVE BEEN MADE KNOWINGLY, INTENTIONALLY AND WILLINGLY BY GRANTOR AS PART OF A BARGAINED-FOR LOAN TRANSACTION; AND (5) AGREES THAT THE PROVISIONS HEREOF ARE INCORPORATED INTO AND MADE A PART OF THE SECURITY DEED.

*READ AND AGREED BY GRANTOR:*

Signed, sealed and delivered, in the presence of

[signature]

[signature]
Notary Public

LESIA M. WEST NOTARY PUBLIC CARROLL COUNTY, GA

[signature] (SEAL)
JANET HILL - Grantor

_______________ (SEAL)
- Grantor

_______________ (SEAL)
- Grantor

_______________ (SEAL)
- Grantor

## CLOSING ATTORNEY'S AFFIDAVIT

Before the undersigned attesting officer personally appeared the undersigned closing attorney, who having been first duly sworn according to law, states under oath as follows:

In closing the above loan, but prior to the execution of the Deed to Secure Debt and "Waiver of Borrower's Rights" by the Borrower, I reviewed with and explained to the Borrower the terms and provisions of the Deed to Secure Debt and particularly the provisions thereof authorizing the Lender to sell the secured property by a nonjudicial foreclosure under a power of sale, together with the "Waiver of Borrower's Rights" and informed the Borrower of Borrower's rights under the Constitution of the State of Georgia and the Constitution of the United States to notice and a judicial hearing prior to such foreclosure in the absence of a knowing, intentional and willing contractual waiver by Borrower of Borrower's rights. After said review with and explanation to Borrower, Borrower executed the Deed to Secure Debt and "Waiver of Borrower's Rights."

Based on said review with and explanation to the Borrower, it is my opinion that Borrower knowingly, intentionally and willingly executed the waiver of Borrower's constitutional rights to notice and judicial hearing prior to any such nonjudicial foreclosure.

Sworn to and subscribed before me on the date set forth above.

[signature]
Notary Public

LESIA M. WEST NOTARY PUBLIC CARROLL COUNTY, GA

[signature]
Closing Attorney

## FORECLOSURE CLOSING DISCLOSURE

O.C.G.A Section 7-1-1014(3) requires that we inform you that if you fail to meet any condition or term of the documents that you sign in connection with obtaining a mortgage loan you may lose the property that serves as collateral for the mortgage loan through foreclosure.

[signature]
JANET HILL

Deed Book 41205 Pg 253

Prepared by: TERRI MILLER

DOC ID #: REDACTED

GEORGIA
GRANTOR: JANET HILL
LENDER: AMERICA'S WHOLESALE LENDER
DATE OF SECURITY DEED: 10/06/2005

## WAIVER OF BORROWER'S RIGHTS

BY EXECUTION OF THIS PARAGRAPH, GRANTOR EXPRESSLY: (1) ACKNOWLEDGES THE RIGHT TO ACCELERATE THE DEBT AND THE POWER OF ATTORNEY GIVEN HEREIN TO LENDER TO SELL THE PREMISES BY NONJUDICIAL FORECLOSURE UPON DEFAULT BY GRANTOR WITHOUT ANY JUDICIAL HEARING AND WITHOUT ANY NOTICE OTHER THAN SUCH NOTICE AS IS REQUIRED TO BE GIVEN UNDER THE PROVISIONS HEREOF; (2) WAIVES ANY AND ALL RIGHTS WHICH GRANTOR MAY HAVE UNDER THE FIFTH AND FOURTEENTH AMENDMENTS TO THE CONSTITUTION OF THE UNITED STATES, THE VARIOUS PROVISIONS OF THE CONSTITUTION FOR THE SEVERAL STATES, OR BY REASON OF ANY OTHER APPLICABLE LAW TO NOTICE AND TO JUDICIAL HEARING PRIOR TO THE EXERCISE BY LENDER OF ANY RIGHT OR REMEDY HEREIN PROVIDED TO LENDER, EXCEPT SUCH NOTICE AS IS SPECIFICALLY REQUIRED TO BE PROVIDED HEREOF; (3) ACKNOWLEDGES THAT GRANTOR HAS READ THIS DEED AND SPECIFICALLY THIS PARAGRAPH AND ANY AND ALL QUESTIONS REGARDING THE LEGAL EFFECT OF SAID DEED AND ITS PROVISIONS HAVE BEEN EXPLAINED FULLY TO GRANTOR AND GRANTOR HAS BEEN AFFORDED AN OPPORTUNITY TO CONSULT WITH COUNSEL OF GRANTOR'S CHOICE PRIOR TO EXECUTING THIS DEED; (4) ACKNOWLEDGES THAT ALL WAIVERS OF THE AFORESAID RIGHTS OF GRANTOR HAVE BEEN MADE KNOWINGLY, INTENTIONALLY AND WILLINGLY BY GRANTOR AS PART OF A BARGAINED FOR LOAN TRANSACTION; AND (5) AGREES THAT THE PROVISIONS HEREOF ARE INCORPORATED INTO AND MADE A PART OF THE SECURITY DEED.

READ AND AGREED BY GRANTOR:

Signed, Sealed and delivered in the presence of:

_______________ (Seal) JANET HILL -Grantor

_______________ (Seal) -Grantor

_______________ Notary Public _______________ (Seal) -Grantor

LESIA M. WEST NOTARY PUBLIC CARROLL COUNTY, GA

_______________ (Seal) -Grantor

## CLOSING ATTORNEY'S AFFIDAVIT

Before the undersigned attesting officer personally appeared the undersigned closing attorney, who, having been first duly sworn according to law, states under oath as follows:

In closing the above loan, but prior to the execution of the Deed to Secure Debt and "Waiver of the Borrower's Rights" by the Borrower(s), I reviewed with and explained to the Borrower(s) the terms and provisions of the Deed to Secure Debt and particularly the provisions thereof authorizing the Lender to sell the secured property by a nonjudicial foreclosure under a power of sale, together with the "Waiver of Borrower's Rights" and informed the Borrower(s) of Borrower's rights under the Constitution of the State of Georgia and the Constitution of the United States to notice and a judicial hearing prior to such foreclosure in the absence of a knowing, intentional and willing contractual waiver by Borrower(s) of Borrower's rights. After said review with and explanation to Borrower(s), Borrower(s) executed the Deed to Secure Debt and "Waiver of Borrower's Rights."

Based on said review with and explanation to the Borrower(s), it is my opinion that Borrower(s) knowingly, intentionally and willingly executed the waiver of Borrower's constitutional rights to notice and judicial hearing prior to any nonjudicial foreclosure.

Sworn to and subscribed before me on the date set forth above.

_______________ Notary Public _______________ Closing Attorney

LESIA M. WEST NOTARY PUBLIC CARROLL COUNTY, GA

## FORECLOSURE CLOSING DISCLOSURE

**O.C.G.A. Section 7-1-1014(3) requires that we inform you that if you fail to meet any condition or term of the documents that you sign in connection with obtaining a mortgage loan you may lose the property that serves as collateral for the mortgage loan through foreclosure."**

_______________ Borrower JANET HILL _______________ Borrower

_______________ Borrower _______________ Borrower



REDACTED REDACTED

# EXHIBIT "D"

Deed Book 50135 Pg 399
Filed and Recorded Jun-14-2011 02:12pm
2011-0158007
Cathelene Robinson
Clerk of Superior Court
Fulton County, Georgia

11-02199, Janet Hill

Return to:

Shuping, Morse & Ross, LLP
6259 Riverdale Road, Suite 100
Riverdale, GA 30274
ATTN: S. Cobb
MIN# REDACTED

# ASSIGNMENT

**FOR VALUE RECEIVED**, the undersigned, being the present owner of such secured interest by virtue of being the original Grantee or the heir, assign, transferee, or devisee of the original Grantee, hereby transfers, without recourse, to The Bank of New York Mellon FKA The Bank of New York, as trustee for the certificateholders of CWALT, Inc., Alternative Loan Trust 2005-58, Mortgage Pass-Through Certificates, Series 2005-58 whose address is 101 Barclay St., New York, NY 10286 all right, title, interest, powers and options in, to and under that certain Deed to Secure Debt from Janet Hill to Mortgage Electronic Registration Systems, Inc. ("MERS") as nominee for America's Wholesale Lender dated October 6, 2005 and recorded in Deed Book 41205, Page 241, Fulton County, Georgia records, as well as the land described therein and the indebtedness secured thereby.

**IN WITNESS WHEREOF**, the undersigned has hereunto set its hand and seal this day of June 1, 2011.

Mortgage Electronic Registration Systems, Inc. ("MERS") as nominee for America's Wholesale Lender

BY: Debbie Nieblas (SEAL)
Name & Title: DEBBIE NIEBLAS
Assistant Secretary
(Corporate Seal)

Witness Jeanine Abramoff

Witness SRBUI MURADYAN

Notary Public
My Commission Expires: ______
See Attached

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. CORPORATE SEAL 1999 DELAWARE

Deed Book 50135 Pg 400
Cathelene Robinson
Clerk of Superior Court
Fulton County, Georgia

## ACKNOWLEDGMENT

State of California
County of Ventura )

On June 1, 2011 before me, Penny Russo Marchal "Notary Public"
(insert name and title of the officer)

personally appeared **************Debbie Nieblas**************
who proved to me on the basis of satisfactory evidence to be the person(~~s~~) whose name(~~s~~) is/~~are~~ subscribed to the within instrument and acknowledged to me that ~~he~~/she/~~they~~ executed the same in ~~his~~/her/~~their~~ authorized capacity(~~ies~~), and that by ~~his~~/her/~~their~~ signature(~~s~~) on the instrument the person(~~s~~), or the entity upon behalf of which the person(~~s~~) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature [signature] (Seal)

PENNY RUSSO MARCHAL
Commission # 1849192
Notary Public - California
Los Angeles County
My Comm. Expires May 15, 2013

# EXHIBIT "E"

# NYS Department of State

## Division of Corporations

### Entity Information

The information contained in this database is current through February 14, 2013.

---

Selected Entity Name: AMERICA'S WHOLESALE LENDER, INC.
Selected Entity Status Information

| | |
|---|---|
| **Current Entity Name:** | AMERICA'S WHOLESALE LENDER, INC. |
| **DOS ID #:** | 3753565 |
| **Initial DOS Filing Date:** | DECEMBER 16, 2008 |
| **County:** | NEW YORK |
| **Jurisdiction:** | NEW YORK |
| **Entity Type:** | DOMESTIC BUSINESS CORPORATION |
| **Current Entity Status:** | ACTIVE |

Selected Entity Address Information

**DOS Process (Address to which DOS will mail process if accepted on behalf of the entity)**

NATIONAL REGISTERED AGENTS, INC.
STE. 105
875 AVENUE OF THE AMERICAS
NEW YORK, NEW YORK, 10001

**Chairman or Chief Executive Officer**

DENNIS BELL
875 AVE OF THE AMERICAS
STE 105
NEW YORK, NEW YORK, 10001

**Principal Executive Office**

AMERICA'S WHOLESALE LENDER, INC.
875 AVE OF THE AMERICAS
STE 105
NEW YORK, NEW YORK, 10001

**Registered Agent**

NATIONAL REGISTERED AGENTS, INC.

STE. 105
875 AVENUE OF THE AMERICAS
NEW YORK, NEW YORK, 10001

This office does not record information regarding the names and addresses of officers, shareholders or directors of nonprofessional corporations except the chief executive officer, if provided, which would be listed above. Professional corporations must include the name(s) and address(es) of the initial officers, directors, and shareholders in the initial certificate of incorporation, however this information is not recorded and only available by viewing the certificate.

***Stock Information**

| # of Shares | Type of Stock | $ Value per Share |
|---|---|---|
| 200 | No Par Value | |

*Stock information is applicable to domestic business corporations.

**Name History**

| Filing Date | Name Type | Entity Name |
|---|---|---|
| DEC 16, 2008 | Actual | AMERICA'S WHOLESALE LENDER, INC. |

A **Fictitious** name must be used when the **Actual** name of a foreign entity is unavailable for use in New York State. The entity must use the fictitious name when conducting its activities or business in New York State.

NOTE: New York State does not issue organizational identification numbers.

Search Results New Search

Services/Programs | Privacy Policy | Accessibility Policy | Disclaimer | Return to DOS Homepage | Contact Us

# EXHIBIT "F"

print

# SHUPING, MORSE & ROSS NOTICE OF SALE UNDER POWER

07.05.11 - 11:40 pm
SHUPING, MORSE & ROSS

NOTICE OF SALE UNDER POWER By virtue of the power of sale contained in a Deed to Secure Debt by Janet Hill to Mortgage Electronic Registration Systems, Inc. ("MERS") as nominee for America's Wholesale Lender, dated October 6, 2005 and filed for record October 25, 2005 in Deed Book 41205, Page 241, Fulton County, Georgia records, and securing a Note in the original principal amount of $464,000.00; last transferred to The Bank of New York Mellon FKA The Bank of New York, as trustee for the certificateholders of CWALT, Inc., Alternative Loan Trust 2005-58, Mortgage Pass-Through Certificates, Series 2005-58 by Assignment filed for record June 14, 2011 in Deed Book 50135, Page 399, Fulton County, Georgia records, there will be sold at a public outcry for cash to the highest bidder before the Courthouse door of Fulton County, Georgia, between the legal hours of sale on the first Tuesday in August, 2011, by The Bank of New York Mellon FKA The Bank of New York, as trustee for the certificateholders of CWALT, Inc., Alternative Loan Trust 2005-58, Mortgage Pass-Through Certificates, Series 2005-58 as Attorney-in-Fact for Janet Hill the following property to-wit:
ALL THAT TRACT or parcel of land lying and being in Land Lot 46 of the 14th District of Fulton County, City of Atlanta, Georgia, and being more particularly described as follows:
BEGINNING at a point located at the intersection of the southerly side of the right of way of Auburn Avenue (55-foot right of way) and the easterly side of the right of way of Howell Street (30-foot right of way); thence running along the southerly side of said Auburn Avenue North 66 degrees 34 minutes 07 seconds East a distance of 46.00 feet to inch rebar found; thence leaving the southerly side of the right of way of Auburn Avenue and running South 00 degrees 00 minutes 00 seconds East a distance of 111.50 feet to a point; thence running South 88 degrees 54 minutes 06 seconds West a distance of 40.50 feet to an inch OT found on the easterly side of the right of way of said Howell Street; thence running along the easterly side of the right of way of said Howell Street North 01 degrees 02 minutes 42 seconds West a distance of 94.00 feet to the POINT OF BEGINNING.
Said property containing 0.097 acres, as per survey prepared for Janet Hill, prepared by Richard E. McDaniel, Jr., Georgia Registered Land Surveyor No. 2734, dated September 15, 1999.
Said property being known as 543 Auburn Avenue, according to the present system of numbering houses in Fulton County, Georgia.
The above described property is also known as 543 Auburn Avenue, Atlanta, GA 30312.
The indebtedness secured by said Deed to Secure Debt having been declared

due and payable because of default in the payment of the indebtedness secured thereby, this sale will be made for the purpose of paying the same and all expenses of sale, including attorney's fees, if applicable.

BEST COPY AVAILABLE

The property will be sold as the property of the aforesaid grantor subject to the following: all prior restrictive covenants, easements, rights-of-way, security deeds, or encumbrances of record; all valid zoning ordinances; matters which would be disclosed by an accurate survey of the property or by any inspection of the property; all outstanding taxes, assessments, unpaid bills, charges, and expenses that are a lien against the property whether due and payable or not yet due and payable.

To the best of the undersigned's knowledge and belief, possession of the subject property is held by Janet Hill.

Pursuant to O.C.G.A. 164> 44-14-162.2, the name, address and telephone number of the individual or entity who shall have the full authority to negotiate, amend or modify all terms of the above described mortgage is as follows: BAC Home Loans Servicing, L.P., Attn: Loss Mitigation Dept., P. O. Box 5170, MS SV314B, Simi Valley, CA 93065, Telephone: 1-800-669-6650. The foregoing notwithstanding, nothing in O.C.G.A. 164> 44-14-162.2 shall be construed to require BAC Home Loans Servicing, LP as servicer for The Bank of New York Mellon FKA The Bank of New York, as trustee for the certificateholders of CWALT, Inc., Alternative Loan Trust 2005-58, Mortgage Pass-Through Certificates, Series 2005-58 to negotiate, amend or modify the terms of the Deed to Secure Debt described herein.

The Bank of New York Mellon FKA The Bank of New York, as trustee for the certificateholders of CWALT, Inc., Alternative Loan Trust 2005-58, Mortgage Pass-Through Certificates, Series 2005-58 as Attorney-in-Fact for Janet Hill

SHUPING, MORSE & ROSS, LLP

By: S. Andrew Shuping, Jr.

S. Andrew Shuping, Jr.

6259 Riverdale Road, Suite 100

Riverdale, Georgia 30274-1698

(770) 991-0000

THIS LAW FIRM IS ATTEMPTING TO COLLECT A DEBT. ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.

#1718725:7/5-4sh

---

© georgiapublicnotice.com 2011

IN THE COURT OF FULTON COUNTY
STATE OF GEORGIA

COPY AVAILABLE

JANET HILL,

Plaintiffs,

vs.

AMERICA'S WHOLESALE LENDER; MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AND THE BANK OF NEW YORK MELLON F/K/A THE BANK OF NEW YORK AS TRUSTEE FOR THE CERTIFICATEHOLDERS OF CWALT, INC.

Defendants.

CIVIL CASE FILING NO.

2013CV228015

FILED IN OFFICE
MAR 12 2013
DEPUTY CLERK SUPERIOR COURT
FULTON COUNTY, GA

COPY

**MOTION FOR SERVICE BY PUBLICATION**

Plaintiff moves the court, pursuant to O.C.G.A. § 9-11-4(f)(1)(b), for an order directing service to be made upon the defendant by publication of summons on the grounds set forth in the affidavit attached hereto.

This 12TH day of March, 2013.

Respectfully submitted

Grady Roberts
State Bar No. 609540

94 Howell St NE
Atlanta, GA 30312

ORIGINAL

RCM

IN THE SUPERIOR COURT OF FULTON COUNTY

STATE OF GEORGIA

FILED IN OFFICE
APR - 5 2013
DEPUTY CLERK SUPERIOR COURT
FULTON COUNTY, GA

JANET HILL

Plaintiff

VS

CIVIL ACTION
CASE 2013 CV228015

AMERICA'S WHOLESALE LENDER MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC AND **THE BANK OF NEW YORK MELLON F/K/A THE BANK OF NEW YORK AS TRUSTEE FOR THE CERTIFICATE HOLDERS OF CWALT, INC.,** ALTERNATIVE LOAN TRUST 2005-58, MORTGAGE PASS-THROUGH CERTIFICATES SERIES 2005-58

Defendant(s)

**AFFIDAVIT OF SERVICE**

Comes now T. Wayne Fuller GCPS # 0000135, who having been duly sworn, deposes and states that he/she did serve the Defendant/ Business: **THE BANK OF NEW YORK MELLON F/K/A THE BANK OF NEW YORK AS TRUSTEE FOR THE CERTIFICATE HOLDERS OF CWALT, INC.** by serving Patricia Robinson, Agent for Service/Georgia Secretary of State with Summons and Complaint at the given address of 2 Martin Luther King jr. Dr. West Tower Suite 315, Atlanta, Georgia 30303. The person receiving the service is described as a BF, Age 53 yrs, Weight 149 lbs, Height 5 ft, 4 in, of suitable age and discretion.

The Date of Service is 4/3/2013 at 9:54 AM.

T. Wayne Fuller GCPS # 0000135
T. Wayne Fuller Process Service
I am designated Special Agent for
Service of Process by Order of this Court

Sworn to and Subscribed before me
April 3, 2013

Notary Public

**Fee for this service is $35.00**
Please add this fee to Court Costs
GR

[Notary seal: ... FULLER, NOTARY PUBLIC, ... COUNTY, GA, COMMISSION EXPIRES JAN 3 2014]

IN THE SUPERIOR COURT OF FULTON COUNTY
STATE OF GEORGIA

Administrative Order No. 05167/246 - 247

IN RE: ORDER FOR APPOINTMENT FOR PROCESS SERVICE

Having read and considered the petitions and criminal records, and it appearing to the Court that sufficient grounds exist that each petitioner meets the requirements for appointment by the Court; it is hereby

FILED IN OFFICE
JAN - 2 2013
DEPUTY CLERK SUPERIOR COURT
FULTON COUNTY, GA

**ORDERED** and **ADJUDGED** that the following:

Abebe, Chali
Adams Jr., John
Andrews, Gene
Baker, Benjamin
Benito, Richard
Benito, Robert
Benson, James
Bishop, Walter
Blake, Patricia
Bolling, Katherine
Briley, Donnie
Brinkley, Schellaundye
Brookshire, David
Buck, David
Burns, Kenneth
Byer, Edmond
Canupp, Brenda
Chastain, Michael
Cline, Travis
Creech, David
Cunningham, Sally
Davenport, Alterick
DeVaughn, Carl
Dreeman, Doug
Duchon, Deborah
Evans, Alonzo
Faulkner, Dana
Feathers, Jennifer
Ferrero, Amy
Flatow, Kevin
Fogle, Johnny
Ford, Ronnie
Fox, Juhani
Freese, Jessica
Fuller, Thomas
Gayle, Earl
George, Randal
Gruhn, Tammie
Handley, Wiley
Hassan, Muhsin
Heimerich, Richard
Highsmith, Amos
Horne, Crystal
Horton, Christopher
Irvin, Randall
Johnson, Christina
Jones, Alicia
Kim, Erika
Kim, Leonard
King, Heather
Langford, Nan
Langford, Steve
Letts, William
Lewis, Donald
Lewis, Kevin
Lobin, Jerome
Lobin, Sarah
Lutwack, William
Maggard, Andrew
Mallas, Nicholas
Malone, Rachael
Martinelli, Robin
McClellan, Rodney
Moore, Jeanine
Morgan, Todd
Moss, Cynthia
Nowik, Dennis
Oakley, Joseph
Obrien, Christopher
O'Leary, Christine
Orlins, Peter
Perkins, Karen
Pierceall, John
Poncinie, Richard
Price, Eric
Price, James
Rauser, Jayne
Reddick, Derek
Reid, Cletis
Rice, Robert
Rutledge Sr., Stanley
Shadix, Jimmy
Shepherd, Elizabeth
Sibbald, John
Singleton, Wesley
Sleep, Thomas
Smith, Terral
Smith, Virginia
Smith Jr., Bruce
Snellings, Sharon
Sorensen, Neilse
Stanton, Chris
Stone, Rodney
Swindle, Frank
Tamaroff, Paul
Tarwater, Margaret
Tassaw, Behane
Thompson, Vanessa
Thrash, Nancy
Trumble, Garfield
Velasquez, Julius
Walker, Reginald
Washington, Sabrina
Webber, Melina
West, Eric
Wilson, Kinley
Wingo, Michael
Woodman, Howard
Wright, Wade

BOOK PAGE
05167 - 246

RCM

**ORIGINAL**

IN THE SUPERIOR COURT OF FULTON COUNTY

STATE OF GEORGIA

FILED IN OFFICE
APR 5 2013
DEPUTY CLERK SUPERIOR COURT
FULTON COUNTY, GA

JANET HILL

Plaintiff

VS

CIVIL ACTION
CASE 2013 CV228015

**AMERICA'S WHOLESALE LENDER** MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC AND THE BANK OF NEW YORK MELLON F/K/A THE BANK OF NEW YORK AS TRUSTEE FOR THE CERTIFICATE HOLDERS OF CWALT, INC., ALTERNATIVE LOAN TRUST 2005-58, MORTGAGE PASS-THROUGH CERTIFICATES SERIES 2005-58

Defendant(s)

**AFFIDAVIT OF SERVICE**

Comes now T. Wayne Fuller GCPS # 0000135, who having been duly sworn, deposes and states that he/she did serve the Defendant/ Business: **AMERICA'S WHOLESALE LENDER** by serving Patricia Robinson, Agent for Service/Georgia Secretary of State with Summons and Complaint at the given address of 2 Martin Luther King jr. Dr. West Tower Suite 315, Atlanta, Georgia 30303. The person receiving the service is described as a BF, Age 53 yrs, Weight 149 lbs, Height 5 ft, 4 in, of suitable age and discretion.

The Date of Service is 4/3/2013 at 9:54 AM.

T. Wayne Fuller GCPS # 0000135
T. Wayne Fuller Process Service
I am designated Special Agent for
Service of Process by Order of this Court

Sworn to and Subscribed before me
April 3, 2013

Notary Public

**Fee for this service is $35.00**
Please add this fee to Court Costs
GR

COMMISSION EXPIRES
JAN 3 2014
COUNTY, GA
NOTARY PUBLIC

IN THE SUPERIOR COURT OF FULTON COUNTY
STATE OF GEORGIA

Administrative Order No. 05167/246 - 247

IN RE: ORDER FOR APPOINTMENT FOR PROCESS SERVICE

Having read and considered the petitions and criminal records, and it appearing to the Court that sufficient grounds exist that each petitioner meets the requirements for appointment by the Court; it is hereby

FILED IN OFFICE
JAN - 2 2013
DEPUTY CLERK SUPERIOR COURT
FULTON COUNTY, GA

**ORDERED** and **ADJUDGED** that the following:

Abebe, Chali
Adams Jr., John
Andrews, Gene
Baker, Benjamin
Benito, Richard
Benito, Robert
Benson, James
Bishop, Walter
Blake, Patricia
Bolling, Katherine
Briley, Donnie
Brinkley, Schellaundye
Brookshire, David
Buck, David
Burns, Kenneth
Byer, Edmond
Canupp, Brenda
Chastain, Michael
Cline, Travis
Creech, David
Cunningham, Sally
Davenport, Alterick
DeVaughn, Carl
Dreeman, Doug
Duchon, Deborah
Evans, Alonzo
Faulkner, Dana
Feathers, Jennifer
Ferrero, Amy
Flatow, Kevin
Fogle, Johnny
Ford, Ronnie
Fox, Juhani
Freese, Jessica
Fuller, Thomas
Gayle, Earl
George, Randal
Gruhn, Tammie
Handley, Wiley
Hassan, Muhsin
Heimerich, Richard
Highsmith, Amos
Horne, Crystal
Horton, Christopher
Irvin, Randall
Johnson, Christina
Jones, Alicia
Kim, Erika
Kim, Leonard
King, Heather
Langford, Nan
Langford, Steve
Letts, William
Lewis, Donald
Lewis, Kevin
Lobin, Jerome
Lobin, Sarah
Lutwack, William
Maggard, Andrew
Mallas, Nicholas
Malone, Rachael
Martinelli, Robin
McClellan, Rodney
Moore, Jeanine
Morgan, Todd
Moss, Cynthia
Nowik, Dennis
Oakley, Joseph
Obrien, Christopher
O'Leary, Christine
Orlins, Peter
Perkins, Karen
Pierceall, John
Poncinie, Richard
Price, Eric
Price, James
Rauser, Jayne
Reddick, Derek
Reid, Cletis
Rice, Robert
Rutledge Sr., Stanley
Shadix, Jimmy
Shepherd, Elizabeth
Sibbald, John
Singleton, Wesley
Sleep, Thomas
Smith, Terral
Smith, Virginia
Smith Jr., Bruce
Snellings, Sharon
Sorensen, Neilse
Stanton, Chris
Stone, Rodney
Swindle, Frank
Tamaroff, Paul
Tarwater, Margaret
Tassaw, Behane
Thompson, Vanessa
Thrash, Nancy
Trumble, Garfield
Velasquez, Julius
Walker, Reginald
Washington, Sabrina
Webber, Melina
West, Eric
Wilson, Kinley
Wingo, Michael
Woodman, Howard
Wright, Wade



BOOK PAGE
05167 - 246

be appointed and authorized to serve as a Permanent Process Server in the Fulton County Superior Court, for the Calendar Year 2013, without the necessity of an order for appointment in each individual case.

BY ORDER OF THE Court this 2nd day of January, 2013.

Cynthia Wright, Chief Judge
Fulton County Superior Court
Atlanta Judicial Circuit

Rcm

**ORIGINAL**

IN THE SUPERIOR COURT OF FULTON COUNTY

STATE OF GEORGIA

FILED IN OFFICE
APR 05 2013
DEPUTY CLERK SUPERIOR COURT
FULTON COUNTY, GA

JANET HILL

Plaintiff

VS

CIVIL ACTION
CASE 2013 CV228015

AMERICA'S WHOLESALE LENDER **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC** AND THE BANK OF NEW YORK MELLON F/K/A THE BANK OF NEW YORK AS TRUSTEE FOR THE CERTIFICATE HOLDERS OF CWALT, INC., ALTERNATIVE LOAN TRUST 2005-58, MORTGAGE PASS-THROUGH CERTIFICATES SERIES 2005-58

Defendant(s)

**AFFIDAVIT OF SERVICE**

Comes now T. Wayne Fuller GCPS # 0000135, who having been duly sworn, deposes and states that he/she did serve the Defendant/ Business: **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC** by serving Patricia Robinson, Agent for Service/Georgia Secretary of State with Summons and Complaint at the given address of 2 Martin Luther King jr. Dr. West Tower Suite 315, Atlanta, Georgia 30303. The person receiving the service is described as a BF, Age 53 yrs, Weight 149 lbs, Height 5 ft, 4 in, of suitable age and discretion.

The Date of Service is 4/3/2013 at 9:54 AM.

T. Wayne Fuller GCPS # 0000135
T. Wayne Fuller Process Service
I am designated Special Agent for
Service of Process by Order of this Court

Sworn to and Subscribed before me
April 3, 2013

Notary Public

**Fee for this service is $35.00**
Please add this fee to Court Costs
GR

JENNIFER FULLER
COMMISSION EXPIRES
JAN 3 2014
COBB COUNTY, GA
NOTARY PUBLIC

IN THE SUPERIOR COURT OF FULTON COUNTY
STATE OF GEORGIA

Administrative Order No. 05167/246-247

IN RE: ORDER FOR APPOINTMENT FOR PROCESS SERVICE

Having read and considered the petitions and criminal records, and it appearing to the Court that sufficient grounds exist that each petitioner meets the requirements for appointment by the Court; it is hereby

FILED IN OFFICE
JAN - 2 2013
DEPUTY CLERK SUPERIOR COURT
FULTON COUNTY, GA

**ORDERED** and **ADJUDGED** that the following:

Abebe, Chali
Adams Jr., John
Andrews, Gene
Baker, Benjamin
Benito, Richard
Benito, Robert
Benson, James
Bishop, Walter
Blake, Patricia
Bolling, Katherine
Briley, Donnie
Brinkley, Schellaundye
Brookshire, David
Buck, David
Burns, Kenneth
Byer, Edmond
Canupp, Brenda
Chastain, Michael
Cline, Travis
Creech, David
Cunningham, Sally
Davenport, Alterick
DeVaughn, Carl
Dreeman, Doug
Duchon, Deborah
Evans, Alonzo
Faulkner, Dana
Feathers, Jennifer
Ferrero, Amy
Flatow, Kevin
Fogle, Johnny
Ford, Ronnie
Fox, Juhani
Freese, Jessica
Fuller, Thomas
Gayle, Earl
George, Randal
Gruhn, Tammie
Handley, Wiley
Hassan, Muhsin
Heimerich, Richard
Highsmith, Amos
Horne, Crystal
Horton, Christopher
Irvin, Randall
Johnson, Christina
Jones, Alicia
Kim, Erika
Kim, Leonard
King, Heather
Langford, Nan
Langford, Steve
Letts, William
Lewis, Donald
Lewis, Kevin
Lobin, Jerome
Lobin, Sarah
Lutwack, William
Maggard, Andrew
Mallas, Nicholas
Malone, Rachael
Martinelli, Robin
McClellan, Rodney
Moore, Jeanine
Morgan, Todd
Moss, Cynthia
Nowik, Dennis
Oakley, Joseph
Obrien, Christopher
O'Leary, Christine
Orlins, Peter
Perkins, Karen
Pierceall, John
Poncinie, Richard
Price, Eric
Price, James
Rauser, Jayne
Reddick, Derek
Reid, Cletis
Rice, Robert
Rutledge Sr., Stanley
Shadix, Jimmy
Shepherd, Elizabeth
Sibbald, John
Singleton, Wesley
Sleep, Thomas
Smith, Terral
Smith, Virginia
Smith Jr., Bruce
Snellings, Sharon
Sorensen, Neilse
Stanton, Chris
Stone, Rodney
Swindle, Frank
Tamaroff, Paul
Tarwater, Margaret
Tassaw, Behane
Thompson, Vanessa
Thrash, Nancy
Trumble, Garfield
Velasquez, Julius
Walker, Reginald
Washington, Sabrina
Webber, Melina
West, Eric
Wilson, Kinley
Wingo, Michael
Woodman, Howard
Wright, Wade

BOOK PAGE
05167 - 246

be appointed and authorized to serve as a Permanent Process Server in the Fulton County Superior Court, for the Calendar Year 2013, without the necessity of an order for appointment in each individual case.

BY ORDER OF THE Court this 2nd day of January, 2013.

Cynthia Wright, Chief Judge
Fulton County Superior Court
Atlanta Judicial Circuit

RCM

FILED IN OFFICE
JUN - 5 2013
DEPUTY CLERK SUPERIOR COURT
FULTON COUNTY, GA

IN THE SUPERIOR COURT OF FULTON COUNTY
STATE OF GEORGIA

JANET HILL

Plaintiff,

Vs.

AMERICA'S WHOLESALE LENDER; MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AND THE BANK OF NEW YORK AS TRUSTEE FOR THE CERTIFICATEHOLDERS OF CWALT, INC., ALTERNATIVE LOAN TRUST 2005-58, MORTGAGE PASS-THROUGH CERTIFICATES SERIES 2005-58

Defendants.

Civil Action No. 2013CV228015

## PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT

**NOW COMES PLAINTIFF** *JANET HILL* (hereinafter "Plaintiff") by and through her undersigned counsel on the above-styled motion, pursuant to O.C.G.A. § 9-11-55(a), hereby files this Motion for Default Judgment against THE BANK OF NEW YORK AS TRUSTEE FOR THE CERTIFICATEHOLDERS OF CWALT, INC., ALTERNATIVE LOAN TRUST 2005-58, MORTGAGE PASS-THROUGH CERTIFICATES SERIES 2005-58 (herein after "Defendants") and shows this Court as follows:

1.

Defendant, THE BANK OF NEW YORK AS TRUSTEE FOR THE CERTIFICATEHOLDERS OF CWALT, INC., ALTERNATIVE LOAN TRUST 2005-58, MORTGAGE PASS-THROUGH CERTIFICATES SERIES 2005-58, was served via the Secretary of State on April 3, 2013, as Defendant failed to appoint a registered agent and/or maintain a registered office, thus service is considered perfected on said date.

2.

Defendant, THE BANK OF NEW YORK AS TRUSTEE FOR THE CERTIFICATEHOLDERS

OF CWALT, INC., ALTERNATIVE LOAN TRUST 2005-58, MORTGAGE PASS-THROUGH CERTIFICATES SERIES 2005-58, pursuant to O.C.G.A. § 9-11-55(a), were required to file an answer on or before May 6, 2013 to avoid being in default as a matter of law. As of this date, Defendant has not filed an answer.

3.

Defendant, THE BANK OF NEW YORK AS TRUSTEE FOR THE CERTIFICATEHOLDERS OF CWALT, INC., ALTERNATIVE LOAN TRUST 2005-58, MORTGAGE PASS-THROUGH CERTIFICATES SERIES 2005-58, had until May 21, 2013 to exercise their right to open the default pursuant to O.C.G.A. § 9-11-55(a). As of this date, Defendant has not filed a motion to open the default.

4.

As of the date of this motion, Defendants, THE BANK OF NEW YORK AS TRUSTEE FOR THE CERTIFICATEHOLDERS OF CWALT, INC., ALTERNATIVE LOAN TRUST 2005-58, MORTGAGE PASS-THROUGH CERTIFICATES SERIES 2005-58, have not filed any responsive pleadings in this matter.

**WHEREFORE**, Plaintiffs pray that:

a) The Court enters a default judgment against Defendants;

b) This Court considers evidence as to the value of the Plaintiffs' claims, enter judgment against the Defendants and hold a damages hearing;

c) This Court enters judgment in reference to expenses of litigation to include attorney fees;

d) That Plaintiff be allowed to move back into her home immediately; and

e) Any such other and further relief as this Court may deem just and proper within the

bounds of the law.

This 5th day of June, 2013.

Respectfully Submitted

Grady A. Roberts III
Attorney for Plaintiff
Georgia Bar No.: 609540

Roberts Law LLC
94 Howell St NE
Atlanta, GA 30312

IN THE SUPERIOR COURT OF FULTON COUNTY
STATE OF GEORGIA

| | |
|---|---|
| JANET HILL<br><br>Plaintiff,<br><br>Vs.<br><br>AMERICA'S WHOLESALE LENDER; MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AND THE BANK OF NEW YORK AS TRUSTEE FOR THE CERTIFICATEHOLDERS OF CWALT, INC., ALTERNATIVE LOAN TRUST 2005-58, MORTGAGE PASS-THROUGH CERTIFICATES SERIES 2005-58<br><br>Defendants. | Civil Action No. 2013CV228015 |

**CERTIFICATE**

I hereby certify that the Defendant, *THE BANK OF NEW YORK AS TRUSTEE FOR THE CERTIFICATEHOLDERS OF CWALT, INC., ALTERNATIVE LOAN TRUST 2005-58, MORTGAGE PASS-THROUGH CERTIFICATES SERIES 2005-58* in the above-captioned action was served on the 3rd day of April, 2013, by the following means: Service via certified process server to Georgia Secretary of State as required by law because Defendant failed to appoint a registered agent and/or maintain a registered office as shown by Affidavit of Service filed in the court records. I further certify that there has been no defensive pleading filed by said party.

This 5th day of June, 2013.

Respectfully Submitted

Grady A. Roberts III
Attorney for Plaintiff
Georgia Bar No.: 609540

Roberts Law LLC

94 Howell St NE
Atlanta, GA 30312

 40386697

COPY

IN THE SUPERIOR COURT OF FULTON COUNTY
STATE OF GEORGIA

FILED IN OFFICE
AUG 1 9 2013
DEPUTY CLERK SUPERIOR COURT
FULTON COUNTY, GA

JANET HILL,

Plaintiff,

vs.

AMERICA'S WHOLESALE LENDER, MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AND THE BANK OF NEW YORK MELLON F/K/A THE BANK OF NEW YORK AS TRUSTEE FOR THE CERTIFICATEHOLDERS OF CWALT, INC., ALTERNATIVE LOAN TRUST 2005-58, MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2005-58,

Defendants.

Civil Action No. 2013CV228015

**EMERGENCY MOTION FOR CONTINUANCE**

**COMES NOW, PLAINTIFF,** by and through their counsel **GRADY A. ROBERTS, III** to file this Motion for Continuance of the calendar call scheduled in the above-referenced case for August 19, 2013 and requests this Honorable Court to grant the next available date for such hearing.

Due to a family emergency Plaintiff t's counsel will not be able to attend court this afternoon. Counsel respectfully requests a continuance until the next available court date.

This 19th day of August, 2013

Respectfully submitted

Grady A. Roberts III
Attorney for Defendants
Georgia Bar No. 609540

**Roberts Law LLC**

94 Howell St NE
Atlanta, GA 30312

IN THE SUPERIOR COURT OF FULTON COUNTY
STATE OF GEORGIA

| | |
|---|---|
| JANET HILL,<br><br>Plaintiff,<br><br>vs.<br><br>AMERICA'S WHOLESALE LENDER, MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AND THE BANK OF NEW YORK MELLON F/K/A THE BANK OF NEW YORK AS TRUSTEE FOR THE CERTIFICATEHOLDERS OF CWALT, INC., ALTERNATIVE LOAN TRUST 2005-58, MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2005-58,<br><br>Defendants. | Civil Action No. 2013CV228015 |

**CERTIFICATE OF SERVICE**

This is to certify that I have this day served the Defendants, a true and correct copy of the within and foregoing *EMERGENCY MOTION FOR CONTINUANCE* and with the same via United States Mail with adequate postage thereon, addressed as follows:

America's Wholesale Lender
P.O. Box 66094
Dallas, TX 75266

Mortgage Electronic Registration Systems, Inc.
P.O. Box 2026
Flint, MI 48501

The Bank of New York Mellon
101 Barclay St
New York, NY 10286

This 19th day of August, 2013 Respectfully submitted

Grady A. Roberts III
Attorney for Defendants
Georgia Bar No. 609540

Roberts Law LLC
94 Howell St NE
Atlanta, GA 30312

IN THE SUPERIOR COURT OF FULTON COUNTY
STATE OF GEORGIA

FILED IN OFFICE
SEP 06 2013
DEPUTY CLERK SUPERIOR COURT
FULTON COUNTY, GA

JANET HILL,

Plaintiff,

vs.

AMERICA'S WHOLESALE LENDER, MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AND THE BANK OF NEW YORK MELLON F/K/A THE BANK OF NEW YORK AS TRUSTEE FOR THE CERTIFICATEHOLDERS OF CWALT, INC., ALTERNATIVE LOAN TRUST 2005-58, MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2005-58,

Defendants.

Civil Action No. 2013CV228015

## NOTICE OF FILING

Plaintiff, *Janet Hill* hereby provides notice of the following:

1. Copy of service letter to The Bank of New York Mellon and envelope; **Exhibit A**
2. Copy of service letter to America's Wholesale Lender and envelope; **Exhibit B**
3. Copy of service letter to Mortgage Electronic Registration System, Inc. and envelope; **Exhibit C**
4. Copy of certified service letter to The Bank of New York Mellon; **Exhibit D**
5. Copy of certified service letter to America's Wholesale Lender; **Exhibit E**
6. Copy of certified service letter to Mortgage Electronic Registration System, Inc.; **Exhibit F**
7. Copy of certified mailing receipts to The Bank of New York Mellon, America's Wholesale Lender and Mortgage Electronic Registration System, Inc.; **Exhibit G**
8. Copy of Certificate of Acknowledgement from Georgia Secretary of State for The Bank of New York Mellon; **Exhibit H**
9. Copy of rejection notice from Georgia Secretary of State for America's Wholesale Lender

since they failed to register and/or appoint an agent as required by Georgia law; **Exhibit I**

10. Copy of rejection notice from Georgia Secretary of State for Mortgage Electronic Registration Systems, Inc. since they failed to register and/or appoint an agent as required by Georgia law; **Exhibit J**
11. Copy of Affidavit of Service by Process Server for The Bank of New York Mellon; **Exhibit K**
12. Copy of Affidavit of Service by Process Server for Mortgage Electronic Systems, Inc.; **Exhibit L**
13. Copy of Affidavit of Service by Process Server for America's Wholesale Lender; **Exhibit M**
14. Copy of File Stamped Motion for Service By Publication. **Exhibit N**

Plaintiff hereby notifies the court of the aforementioned filings to show that Plaintiff has complied with all measures to show that Defendants have been properly served in accordance with Georgia Law.

This 6th day of September, 2013.

Respectfully Submitted

Grady A. Roberts, III
Attorney for Defendant
Georgia Bar No.: 609540

Roberts Law LLC
94 Howell Street
Atlanta, Georgia 30312
Office: 404-794-7000

IN THE SUPERIOR COURT OF FULTON COUNTY
STATE OF GEORGIA

| | |
|---|---|
| JANET HILL,<br><br>Plaintiff,<br><br>vs.<br><br>AMERICA'S WHOLESALE LENDER, MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AND THE BANK OF NEW YORK MELLON F/K/A THE BANK OF NEW YORK AS TRUSTEE FOR THE CERTIFICATEHOLDERS OF CWALT, INC., *ALTERNATIVE LOAN TRUST 2005-58,* MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2005-58,<br><br>Defendants. | Civil Action No. 2013CV228015 |

**CERTIFICATE OF SERVICE**

I certify that on this day I have served Defendant's, a true and correct copy of the within and foregoing Notice of Filing by depositing the same in the United States Postal Service with adequate postage thereon, addressed to the following:

America's Wholesale Lender
P.O. Box 66094
Dallas, TX 75266

Mortgage Electronic Registration Systems, Inc.
P.O. Box 2026
Flint, MI 48501

The Bank of New York Mellon
101 Barclay St
New York, NY 10286

This 6th day of September, 2013

Respectfully Submitted

Grady A. Roberts, III
Attorney for Defendant

Georgia Bar No.: 609540

Roberts Law LLC
94 Howell Street
Atlanta, Georgia 30312

# EXHIBIT A

ROBERTS LAW, LLC

JUNE 26, 2013

*VIA USPS REGULAR MAIL*
The Bank of New York Mellon
P.O. Box 101 Barclay Street
New York, NY 10286

***RE: JANET HILL VS AMERICA'S WHOLESALE LENDER; MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AND THE BANK OF NEW YORK AS TRUSTEE FOR THE CERTIFICATEHOLDERS OF CWALT, INC., ALTERNATIVE LOAN TRUST 2005-58, MORTGAGE PASS-THROUGH CERTIFICATES SERIES 2005-58R1***
***Fulton County Superior Court Case Nos. 2013CV228015***

Dear: The Bank of New York Mellon.

Annexed hereto are the following documents:

1. File Stamp Copy of Summons and Complaint for the above reference case. (6/26/13).

Sincerely,

FILE COPY

Dwanna McNair, Paralegal

Enclosure(s)
dfm

ROBERTS LAW, LLC

Roberts Law, LLC
94 Howell Street NE
Atlanta, GA 30312

$1.12º
US POSTAGE
FIRST-CLASS
071V00881427
30312
000000154

The Bank of New York Mellon
101 Barclay St
New York, NY 10286

S.Hill

# EXHIBIT B

ROBERTS LAW, LLC

JUNE 26, 2013

*<u>VIA USPS REGULAR MAIL</u>*
America's Wholesale Lender.
P.O. Box 660694
Dallas, TX 75266-0694

***RE: JANET HILL VS AMERICA'S WHOLESALE LENDER; MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AND THE BANK OF NEW YORK AS TRUSTEE FOR THE CERTIFICATEHOLDERS OF CWALT, INC., ALTERNATIVE LOAN TRUST 2005-58, MORTGAGE PASS-THROUGH CERTIFICATES SERIES 2005-58R1***
***Fulton County Superior Court Case Nos. 2013CV228015***

Dear America's Wholesale Lender:

Annexed hereto are the following documents:

1. File Stamp Copy of Summons and Complaint for the above reference case. (6/26/13).

Sincerely,

FILE COPY

Dwanna McNair, Paralegal

Enclosure(s)
dfm

ROBERTS LAW, LLC

Roberts Law, LLC
94 Howell Street NE
Atlanta, GA 30312

$1.12⁰
US POSTAGE
FIRST-CLASS

071V00881427
30312
000000155

America's Wholesale Lender
P. O. Box 660694
Dallas, TX 75266-0694

J. Hill

# EXHIBIT C

ROBERTS LAW, LLC

JUNE 26, 2013

*VIA USPS REGULAR MAIL*
Mortgage Electronic Registration Systems, Inc.
P.O. Box 2026
Flint, MI 48501-2026

***RE: JANET HILL VS AMERICA'S WHOLESALE LENDER; MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AND THE BANK OF NEW YORK AS TRUSTEE FOR THE CERTIFICATEHOLDERS OF CWALT, INC., ALTERNATIVE LOAN TRUST 2005-58, MORTGAGE PASS-THROUGH CERTIFICATES SERIES 2005-58R1***
***Fulton County Superior Court Case Nos. 2013CV228015***

Dear Mortgage Electronic Registration Systems, Inc.

Annexed hereto are the following documents:

1. File Stamp Copy of Summons and Complaint for the above reference case. (6/26/13).

Sincerely,

FILE COPY

Dwanna McNair, Paralegal

Enclosure(s)
dfm

94 Howell Street, NE :: Atlanta, GA 30312 :: 404.794.7000 :: 404.794.7001 (fax) :: www.robertslawllc.com

$1.12⁰
US POSTAGE
FIRST-CLASS
071V00881427
30312
000000156

RTS LAW, LLC
Roberts Law, LLC
94 Howell Street NE
Atlanta, GA 30312

Mortgage Electronic Registration
Systems, Inc
P.O. Box 2026
Flint, MI 48501-2026

5.4.11

# EXHIBIT D

ROBERTS LAW, LLC

AUGUST 16, 2013

*VIA USPS CERTIFIED MAIL No. 70121010000324843909*
The Bank of New York Mellon
P.O. Box 101 Barclay Street
New York, NY 10286

***RE: JANET HILL VS AMERICA'S WHOLESALE LENDER; MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AND THE BANK OF NEW YORK AS TRUSTEE FOR THE CERTIFICATEHOLDERS OF CWALT, INC., ALTERNATIVE LOAN TRUST 2005-58, MORTGAGE PASS-THROUGH CERTIFICATES SERIES 2005-58R1***
***Fulton County Superior Court Case Nos. 2013CV228015***

Dear: The Bank of New York Mellon.

Annexed hereto are the following documents:

1. File Stamp Copy of Summons and Complaint for the above reference case. (8/16/13).

Sincerely,

FILE COPY

Dwanna McNair, Paralegal

Enclosure(s)
dfm

# EXHIBIT E

ROBERTS LAW, LLC

AUGUST 16, 2013

*VIA USPS CERTIFIED MAIL No.70121010000324843411*
America's Wholesale Lender.
P.O. Box 660694
Dallas, TX 75266-0694

***RE: JANET HILL VS AMERICA'S WHOLESALE LENDER; MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AND THE BANK OF NEW YORK AS TRUSTEE FOR THE CERTIFICATEHOLDERS OF CWALT, INC., ALTERNATIVE LOAN TRUST 2005-58, MORTGAGE PASS-THROUGH CERTIFICATES SERIES 2005-58R1***
***Fulton County Superior Court Case Nos. 2013CV228015***

Dear America's Wholesale Lender:

Annexed hereto are the following documents:

1. File Stamp Copy of Summons and Complaint for the above reference case. (8/16/13).

Sincerely,

FILE COPY

Dwanna McNair, Paralegal

Enclosure(s)
dfm

# EXHIBIT F

**ROBERTS LAW, LLC**

**AUGUST 16, 2013**

*VIA USPS CERTIFIED MAIL No.70131090000239326837*
Mortgage Electronic Registration Systems, Inc.
P.O. Box 2026
Flint, MI 48501-2026

***RE: JANET HILL VS AMERICA'S WHOLESALE LENDER; MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AND THE BANK OF NEW YORK AS TRUSTEE FOR THE CERTIFICATEHOLDERS OF CWALT, INC., ALTERNATIVE LOAN TRUST 2005-58, MORTGAGE PASS-THROUGH CERTIFICATES SERIES 2005-58R1***
***Fulton County Superior Court Case Nos. 2013CV228015***

Dear Mortgage Electronic Registration Systems, Inc.

Annexed hereto are the following documents:

1. File Stamp Copy of Summons and Complaint for the above reference case. (8/16/2013).

Sincerely,

FILE COPY

Dwanna McNair, Paralegal

Enclosure(s)
dfm

# EXHIBIT G

7012 1010 0003 2484 3909

## U.S. Postal Service™
## CERTIFIED MAIL™ RECEIPT
*(Domestic Mail Only; No Insurance Coverage Provided)*

For delivery information visit our website at www.usps.com®

NEW YORK NY 10286

OFFICIAL USE

| | |
|---|---|
| Postage | $ $2.32 |
| Certified Fee | $3.10 |
| Return Receipt Fee (Endorsement Required) | $2.55 |
| Restricted Delivery Fee (Endorsement Required) | $0.00 |
| Total Postage & Fees | $ $7.97 |

Postmark Here

08/19/2013

Sent To: The Bank of New York Mellon

Street, Apt. No.; or PO Box No.: 101 Barclay St.

City, State, ZIP+4: New York, NY 10286

PS Form 3800, August 2006 See Reverse for Instructions

7012 1010 0003 2484 3411

## U.S. Postal Service™
## CERTIFIED MAIL™ RECEIPT
*(Domestic Mail Only; No Insurance Coverage Provided)*

For delivery information visit our website at www.usps.com®

DALLAS TX 75266

OFFICIAL USE

| | |
|---|---|
| Postage | $ $2.32 |
| Certified Fee | $3.10 |
| Return Receipt Fee (Endorsement Required) | $2.55 |
| Restricted Delivery Fee (Endorsement Required) | $0.00 |
| Total Postage & Fees | $ $7.97 |

Postmark Here

08/19/2013

Sent To: America's Wholesale Lender

Street, Apt. No.; or PO Box No.: P.O. Box 660694

City, State, ZIP+4: Dallas Tx 75266

PS Form 3800, August 2006 See Reverse for Instructions

7013 1090 0002 3932 6837

## U.S. Postal Service™
## CERTIFIED MAIL™ RECEIPT
*(Domestic Mail Only; No Insurance Coverage Provided)*

For delivery information visit our website at www.usps.com®

FLINT MI 48501

OFFICIAL USE

| | |
|---|---|
| Postage | $ $2.32 |
| Certified Fee | $3.10 |
| Return Receipt Fee (Endorsement Required) | $2.55 |
| Restricted Delivery Fee (Endorsement Required) | $0.00 |
| Total Postage & Fees | $ $7.97 |

Postmark Here

08/19/2013

Sent To: Mortage Electronic Registration System

Street, Apt. No.; or PO Box No.: P.O. Box 2026

City, State, ZIP+4: Flint, MI 48501-2026

PS Form 3800, August 2006 See Reverse for Instructions

Jerry Hill

Get your mail when and where you want it with a secure Post Office Box. Sign up for a box online at usps.com/poboxes.
******************************************
******************************************

Bill#: 1000200772837
Clerk: 02

All sales final on stamps and postage
Refunds for guaranteed services only
Thank you for your business
******************************************
******************************************

HELP US SERVE YOU BETTER

Go to: https://postalexperience.com/Pos

TELL US ABOUT YOUR RECENT
POSTAL EXPERIENCE

YOUR OPINION COUNTS
******************************************
******************************************

Customer Copy

LITTLE FIVE POINTS STATION
ATLANTA, Georgia
303079997
1204440050 -0098
08/19/2013 (800)275-8777 04:50:09 PM

Sales Receipt

| Product Description | Sale Qty | Unit Price | Final Price |
|---|---|---|---|
| DALLAS TX 75266 Zone-5 | | | $2.32 |
| First-Class Mail Large Env | | | |
| 7.50 oz. | | | |
| Scheduled Delivery Day: Thu 08/22/13 | | | |
| Return Rcpt (Green Card) | | | $2.55 |
| @@ Certified | | | $3.10 |
| Label #: 70121010000324843411 | | | |
| Issue PVI: | | | $7.97 |
| FLINT MI 48501 Zone-4 | | | $2.32 |
| First-Class Mail Large Env | | | |
| 7.60 oz. | | | |
| Scheduled Delivery Day: Thu 08/22/13 | | | |
| Return Rcpt (Green Card) | | | $2.55 |
| @@ Certified | | | $3.10 |
| Label #: 70131090000239326837 | | | |
| Issue PVI: | | | $7.97 |
| NEW YORK NY 10286 Zone-5 | | | $2.32 |
| First-Class Mail Large Env | | | |
| 7.90 oz. | | | |
| Scheduled Delivery Day: Thu 08/22/13 | | | |
| Return Rcpt (Green Card) | | | $2.55 |
| @@ Certified | | | $3.10 |
| Label #: 70121010000324843909 | | | |
| Issue PVI: | | | $7.97 |
| Total: | | | $23.91 |
| Paid by: | | | |
| Cash | | | $24.00 |
| Change Due: | | | -$0.09 |

@@ For tracking or inquiries go to USPS.com or call 1-800-222-1811.

Order stamps at usps.com/shop or call 1-800-Stamp24. Go to usps.com/clicknship to print shipping labels with postage. For other information call 1-800-ASK-USPS.
******************************************

# EXHIBIT H

**Secretary of State**
**Corporations Division**
**Suite 313, West Tower**
**2 Martin Luther King Jr. Dr.**
**Atlanta, Georgia 30334-1530**

| | | |
|---|---|---|
| DATE FILED | : | APRIL 3, 2013 |
| DOCKET NUMBER | : | 131090003 |
| LOCATION | : | FULTON SUPERIOR COURT |
| FEE | : | $10.00 |

FILING PERSON:

GRADY ROBERTS. ESQ.
ROBERTS LAW. LLC
94 HOWELL ST. NE
ATLANTA. GA 30312

## CERTIFICATE OF ACKNOWLEDGEMENT

I, **Brian P. Kemp,** the Secretary Of State of the State of Georgia, do hereby acknowledge the receipt of copies of legal documents relating to service of process upon the following:

**THE BANK OF NEW YORK MELLON (NONRESIDENT TRUSTEE)**
**FULTON SUPERIOR COURT**
**#13CV28015 - SERVICE MADE VIA O.C.G.A. 53-12-320**

Said documents are filed with the Secretary Of State under the docket number referred to above. If certified copies are requested, the request must be made by docket number.

BRIAN P. KEMP
Secretary of State

# EXHIBIT I

**Secretary of State**
Corporations Division
Suite 313, West Tower
2 Martin Luther King Jr. Dr.
Atlanta, Georgia 30334-1530

Examiner: Darryl Quinn
Email: dquinn@sos.ga.gov
Direct Dial: 404-657-1377
Fax: 770-408-5587
Filing Date: 4-4-13
Date of Notice: 4-22-13

NOTICE OF DEFICIENCY

GRADY ROBERTS, ESQ.
ROBERTS LAW LLC
94 HOWELL ST NE
ATLANTA, GA 30312

RE: Service of Process Filing

| | |
|---|---|
| PLAINTIFF: | JANET HILL |
| PARTY FOR SERVICE: | AMERICA'S WHOLESALE LENDER |
| PENDING IN: | FULTON COUNTY SUPERIOR COURT |
| CASE NO.: | 13CV28015 |

**This filing is deficient for the following reason(s):**

- ☐ AFFIDAVIT
- ☐ COMPLAINT
- ☒ STATUTE — **FILER DID NOT INDICATE AN ACCEPTABLE STATUTE AUTHORIZING SERVICE VIA SECRETARY OF STATE. ALSO, NO INDICATION WAS GIVEN THAT SERVICE WAS MAILED TO THE DALLAS, TEXAS POST OFFICE BOX ADDRESS CITED IN THE COMPLAINT.**
- ☐ FILING FEE
- ☐ OTHER

Certified Mail # 7012 1010 0003 2484 3111

*Please return this form with the corrected documents. If documents are corrected and returned within thirty (30) days of the initial filing* date, the documents will be deemed filed as of the date the completed and corrected filing is received by the Secretary of State's Office. *Deficient filings are deemed* ***abandoned*** *if still pending sixty (60) days from the initial filing date, and a new filing, including payment of filing* fees, will be required to complete the filing. All fees are non-refundable.

# EXHIBIT J

# Secretary of State

Corporations Division
Suite 313, West Tower
2 Martin Luther King Jr. Dr.
Atlanta, Georgia 30334-1530

Examiner: Darryl Quinn
Email: dquinn@sos.ga.gov
Direct Dial: 404-657-1377
Fax: 770-408-5587

Filing Date: 4-4-13
Date of Notice: 4-22-13

## NOTICE OF DEFICIENCY

GRADY ROBERTS, ESQ.
ROBERTS LAW LLC
94 HOWELL ST NE
ATLANTA, GA 30312

RE: Service of Process Filing

| | |
|---|---|
| PLAINTIFF: | JANET HILL |
| PARTY FOR SERVICE: | MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. |
| PENDING IN: | FULTON COUNTY SUPERIOR COURT |
| CASE NO.: | 13CV28015 |

**This filing is deficient for the following reason(s):**

☐ AFFIDAVIT
☐ COMPLAINT
☒ STATUTE — **FILER DID NOT INDICATE AN ACCEPTABLE STATUTE AUTHORIZING SERVICE VIA SECRETARY OF STATE. ALSO, NO INDICATION WAS GIVEN THAT SERVICE WAS MAILED TO THE FLINT, MICHIGAN POST OFFICE BOX ADDRESS CITED IN THE COMPLAINT.**
☐ FILING FEE
☐ OTHER

7013 1090 0002 3932 6837
Certified mail # ~~7012 1010 0003 2484 3459~~

Please return this form with the corrected documents. If documents are corrected and returned within thirty (30) days of the initial filing date, the documents will be deemed filed as of the date the completed and corrected filing is received by the Secretary of State's Office. Deficient filings are deemed <u>abandoned</u> if still pending sixty (60) days from the initial filing date, and a new filing, including payment of filing fees, will be required to complete the filing. All fees are non-refundable.

# EXHIBIT K

IN THE SUPERIOR COURT OF FULTON COUNTY

STATE OF GEORGIA

FILED IN OFFICE
APR - 5 2013
DEPUTY CLERK SUPERIOR COURT
FULTON COUNTY, GA

JANET HILL

Plaintiff

VS

CIVIL ACTION
CASE 2013 CV 28015

AMERICA'S WHOLESALE LENDER MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC AND **THE BANK OF NEW YORK MELLON F/K/A THE BANK OF NEW YORK AS TRUSTEE FOR THE CERTIFICATE HOLDERS OF CWALT, INC.,** ALTERNATIVE LOAN TRUST 2005-58, MORTGAGE PASS-THROUGH CERTIFICATES SERIES 2005-58

Defendant(s)

**AFFIDAVIT OF SERVICE**

Comes now T. Wayne Fuller GCPS # 0000135, who having been duly sworn, deposes and states that he/she did serve the Defendant/ Business: **THE BANK OF NEW YORK MELLON F/K/A THE BANK OF NEW YORK AS TRUSTEE FOR THE CERTIFICATE HOLDERS OF CWALT, INC.** by serving Patricia Robinson, Agent for Service/Georgia Secretary of State with Summons and Complaint at the given address of 2 Martin Luther King jr. Dr. West Tower Suite 315, Atlanta, Georgia 30303. The person receiving the service is described as a BF, Age 53 yrs, Weight 149 lbs, Height 5 ft, 4 in, of suitable age and discretion.

The Date of Service is 4/3/2013 at 9:54 AM.

T. Wayne Fuller GCPS # 0000135
T. Wayne Fuller Process Service
I am designated Special Agent for
Service of Process by Order of this Court

Sworn to and Subscribed before me
April 3, 2013

Notary Public

FILE COPY

**Fee for this service is $35.00**
Please add this fee to Court Costs
GR

FULLER
NOTARY PUBLIC

# EXHIBIT L

IN THE SUPERIOR COURT OF FULTON COUNTY

STATE OF GEORGIA

FILED IN OFFICE
APR - 5 2013
DEPUTY CLERK SUPERIOR COURT
FULTON COUNTY, GA

TL

JANET HILL

Plaintiff

VS

CIVIL ACTION
CASE 2013 CV 28015

AMERICA'S WHOLESALE LENDER **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC** AND THE BANK OF NEW YORK MELLON F/K/A THE BANK OF NEW YORK AS TRUSTEE FOR THE CERTIFICATE HOLDERS OF CWALT, INC., ALTERNATIVE LOAN TRUST 2005-58, MORTGAGE PASS-THROUGH CERTIFICATES SERIES 2005-58

Defendant(s)

**AFFIDAVIT OF SERVICE**

Comes now T. Wayne Fuller GCPS # 0000135, who having been duly sworn, deposes and states that he/she did serve the Defendant/ Business: **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC** by serving Patricia Robinson, Agent for Service/Georgia Secretary of State with Summons and Complaint at the given address of 2 Martin Luther King jr. Dr. West Tower Suite 315, Atlanta, Georgia 30303. The person receiving the service is described as a BF, Age 53 yrs, Weight 149 lbs, Height 5 ft, 4 in, of suitable age and discretion.

The Date of Service is 4/3/2013 at 9:54 AM.

T. Wayne Fuller GCPS # 0000135
T. Wayne Fuller Process Service
I am designated Special Agent for
Service of Process by Order of this Court

Sworn to and Subscribed before me
April 3, 2013

Notary Public

**Fee for this service is $35.00**
Please add this fee to Court Costs
GR

FILE COPY

# EXHIBIT M

IN THE SUPERIOR COURT OF FULTON COUNTY

STATE OF GEORGIA

FILED IN OFFICE
APR - 5 2013
DEPUTY CLERK SUPERIOR COURT
FULTON COUNTY, GA

JANET HILL

Plaintiff

VS

CIVIL ACTION
CASE 2013 CV 28015

AMERICA'S WHOLESALE LENDER MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC AND THE BANK OF NEW YORK MELLON F/K/A THE BANK OF NEW YORK AS TRUSTEE FOR THE CERTIFICATE HOLDERS OF CWALT, INC., ALTERNATIVE LOAN TRUST 2005-58, MORTGAGE PASS-THROUGH CERTIFICATES SERIES 2005-58

Defendant(s)

**AFFIDAVIT OF SERVICE**

Comes now T. Wayne Fuller GCPS # 0000135, who having been duly sworn, deposes and states that he/she did serve the Defendant/ Business: **AMERICA'S WHOLESALE LENDER** by serving Patricia Robinson, Agent for Service/Georgia Secretary of State with Summons and Complaint at the given address of 2 Martin Luther King jr. Dr. West Tower Suite 315, Atlanta, Georgia 30303. The person receiving the service is described as a BF, Age 53 yrs, Weight 149 lbs, Height 5 ft, 4 in, of suitable age and discretion.

The Date of Service is 4/3/2013 at 9:54 AM.

T. Wayne Fuller GCPS # 0000135
T. Wayne Fuller Process Service
I am designated Special Agent for
Service of Process by Order of this Court

Sworn to and Subscribed before me
April 3, 2013

Notary Public

**Fee for this service is $35.00**
Please add this fee to Court Costs
GR

FILE COPY

# EXHIBIT N

IN THE COURT OF FULTON COUNTY
STATE OF GEORGIA

COPY AVAILABLE

JANET HILL,

Plaintiffs,

vs.

AMERICA'S WHOLESALE LENDER; MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AND THE BANK OF NEW YORK MELLON F/K/A THE BANK OF NEW YORK AS TRUSTEE FOR THE CERTIFICATEHOLDERS OF CWALT, INC.

Defendants.

CIVIL CASE FILING NO.

2013CV228015

FILED IN OFFICE
MAR 12 2013
DEPUTY CLERK SUPERIOR COURT
FULTON COUNTY, GA

**MOTION FOR SERVICE BY PUBLICATION**

Plaintiff moves the court, pursuant to O.C.G.A. § 9-11-4(f)(1)(b), for an order directing service to be made upon the defendant by publication of summons on the grounds set forth in the affidavit attached hereto.

This 12[TH] day of March, 2013.

Respectfully submitted

Grady Roberts
State Bar No. 609540

94 Howell St NE
Atlanta, GA 30312

ROBERTS LAW, LLC

Roberts Law, LLC
94 Howell Street NE
Atlanta, GA 30312

U.S. POSTAGE
PAID
ATLANTA, GA
30324
SEP 10, '13
AMOUNT
$2.12
00061895-01

UNITED STATES POSTAL SERVICE
1000
48501

Mortgage Electronic Registration System, Inc.,
P.O. Box 2026
Flint, MI 48501

COPY

FILED IN OFFICE
SEP 11 2013
DEPUTY CLERK SUPERIOR COURT
FULTON COUNTY, GA

IN THE SUPERIOR COURT OF FULTON COUNTY
STATE OF GEORGIA

| | |
|---|---|
| JANET HILL,<br><br>Plaintiff,<br><br>vs.<br><br>AMERICA'S WHOLESALE LENDER, MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AND THE BANK OF NEW YORK MELLON F/K/A THE BANK OF NEW YORK AS TRUSTEE FOR THE CERTIFICATEHOLDERS OF CWALT, INC., ALTERNATIVE LOAN TRUST 2005-58, MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2005-58,<br><br>Defendants. | Civil Action No. 2013CV228015 |

**AFFIDAVIT OF SERVICE BY MAIL**

Georgia, Fulton County

*Dwanna McNair,* being duly sworn, says: I am not a party to the action and I am over 18 years if age. On the August 16, 2013 I served a true copy of the Summons and Complaint by mailing the same regular mail and certified mail in a sealed envelope, with postage prepaid thereon, in a post-office or official depository of the United States Postal Service addressed to the last known addressee as indicted below:

America's Wholesale Lender
P.O. Box 66094
Dallas, TX 75266

Mortgage Electronic Registration Systems, Inc.
P.O. Box 2026
Flint, MI 48501

The Bank of New York Mellon
101 Barclay St

New York, NY 10286

This 3rd day of September, 2013.

Respectfully Submitted

Dwanna McNair

Sworn to and subscribed before me, this 3rd day of Sept. [, 2013 [number of year].

Notary Public, Dekalb County Georgia

My commission expires

4/17/2017, 2013(SEAL)